Marianne STANLEY, Plaintiff–Appellant,

v.

UNIVERSITY OF SOUTHERN CALIFORNIA and Michael L. Garrett, individually and in his official capacity as Athletic Director, Defendants–Appellees.

Nos. 95–55466, 95–56250, 96–55004.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 7, 1996.

Submission withdrawn Nov. 28, 1997.

Resubmitted May 24, 1999.

Filed June 2, 1999.

Robert L. Bell, Law Offices of Robert L. Bell, Washington, D.C. for the plaintiff-appellant.

J. Al Latham, Jr., Paul, Hastings, Janofsky & Walker, Los Angeles, California for the defendants-appellees.

Before: HUG, Chief Judge, PREGERSON and REINHARDT, Circuit Judges.

HUG, Chief Judge:

Appellant Marianne Stanley appeals from the district court's order granting summary judgment in favor of defendants University of Southern California and Michael Garrett on Stanley's claims of discrimination and breach of employment contract. Stanley also appeals the denial of her motion to recuse Judge Davies, and her motion to re-tax costs. Appellants move for an award of sanctions against Stanley for filing the latter two appeals.

### FACTUAL AND PROCEDURAL BACKGROUND

Marianne Stanley was hired as head coach of the women's basketball team for the University of Southern California ("USC") in 1989. Her initial contract, signed in July of that year, was for a four-year term, expiring June 30, 1993. The contract provided that she would make a base salary of $60,000 per year. This base salary was increased to $62,000 per year in 1992. The women's basketball program at USC enjoyed much success during Stanley's tenure.

Defendant Michael Garrett is the Athletic Director at USC. On April 20, 1993, two months prior to the expiration of Stanley's contract, Stanley and Garrett had an initial meeting to negotiate a new contract. The parties disagree over what took place at this meeting. Stanley contends that on that date she entered into a contract for a salary equivalent to that of George Raveling, the USC men's basketball coach. It is undisputed that Garrett expressly stated that USC could not pay her that salary, but that he would make her a formal offer in writing shortly after that meeting.

On April 27, 1993, Garrett offered Stanley, in writing, a three-year contract providing $80,000 in year one, $90,000 in year two, and $100,000 in year three, with a $6,000 per year housing allowance for each of the three years. The parties met again on May 27, 1993, at which point Garrett claims that Stanley rejected the April 27 offer because she insisted that her compensation should be equivalent to Raveling's. Stanley argues that she never rejected this offer, but simply disagreed as to the amount of compensation, because the April 27 offer was inconsistent with the April 20 offer—for Raveling's salary level—that she already had accepted.

On June 7, 1993, Stanley proposed a three-year contract providing $96,000 per year for the first eighteen months, and a salary equivalent to that of Raveling for the remainder of the term. Garrett rejected this offer. Stanley then retained an attorney who, on June 18, 1993, proposed to Garrett a three-year contract with an automatic two-year renewal provision, and total compensation of $88,000 for year one, $97,000 for year two, and $112,000 for year three, plus additional incentives. Garrett

rejected this offer and withdrew the April 27 offer.

On June 21, 1993, Garrett sent to Stanley's attorney a written offer for a one-year contract for $96,000. Stanley's existing contract expired on June 30, 1993, but Stanley continued to perform her duties. On July 13, while on a recruiting trip, Stanley asked Garrett if he would still offer her a multi-year contract. He indicated that his June 21 one-year contract offer was USC's final offer, and that Stanley would have to accept or reject it by the end of the day. Stanley did not respond, but sent a memo to Garrett on July 14 requesting additional time to consider the offer. On July 15 Garrett revoked the offer, informed Stanley that he was seeking a new coach for the team, and requested that Stanley perform no further services for USC.

On August 5, 1993, Stanley initiated this action in Los Angeles County Superior Court, making claims of sex discrimination and retaliatory discharge. On August 6, 1993, the Superior Court granted Stanley's request for a temporary restraining order reinstating Stanley as head coach of the women's team at $96,000 per year pending the hearing on Stanley's motion for preliminary injunction. On that same day, defendants removed the action to federal court on the ground that the complaint stated claims arising under federal law.

On August 30, 1993, the district court denied the motion for preliminary injunction, and Stanley appealed. This court affirmed the denial of the preliminary injunction in an opinion filed January 6, 1994. *Stanley v. University of Southern California,* 13 F.3d 1313 (9th Cir.1994) ("*Stanley I*"). Between September 1993 and February 1994, Stanley amended her complaint several times, and defendants' motions to dismiss were granted as to several claims. Stanley's Third Amended Complaint alleges the following causes of action: (1) violation of the Equal Pay Act, 29 U.S.C. § 206(d)(1) and California Fair Employment and Housing Act ("FEHA");

(2) violation of Article I, § 8 of the California Constitution; (3) violation of Title IX of the Civil Rights Act of 1972, 20 U.S.C. § 1681; (4) retaliation; (5) wrongful discharge in violation of public policy; (6) breach of express contract; (7) breach of implied-in-fact contract; and (8) breach of implied covenant of good faith and fair dealing. Stanley sought reinstatement, declaratory relief, injunctive relief preventing USC from further discriminating against her, back pay, three million dollars in compensatory damages, and five million dollars in punitive damages.

On October 17, 1994, defendants filed a motion for summary judgment. After Stanley was allowed additional time to conduct discovery, on March 10, 1995, the district court granted summary judgment for USC and Garrett. This appeal followed.

### DISCUSSION

I.  Discrimination Claims

We review the district court's grant of summary judgment de novo. *Margolis v. Ryan,* 140 F.3d 850, 852 (9th Cir.1998). We address each claim in turn.

A.  Equal Pay Act Claim

The Equal Pay Act provides in relevant part:

> No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees ... at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions....

29 U.S.C. § 206(d)(1).

 In an Equal Pay Act case, the plaintiff has the burden of establishing a

prima facie case of discrimination by showing that employees of the opposite sex were paid different wages for equal work. The prima facie case is limited to a comparison of the jobs in question, and does not involve a comparison of the individuals who hold the jobs. *See, e.g., Brock v. Georgia Southwestern College,* 765 F.2d 1026, 1032 (11th Cir.1985) (citing *Hein v. Oregon College of Educ.,* 718 F.2d 910, 914 (9th Cir.1983)). To make out a prima facie case, the plaintiff bears the burden of showing that the jobs being compared are "substantially equal." *See* 29 C.F.R. § 1620.13(a); *see also Spaulding v. University of Wash.,* 740 F.2d 686, 697 (9th Cir.1984), *overruled on other grounds, Atonio v. Wards Cove Packing Co., Inc.,* 810 F.2d 1477 (9th Cir.1987) (en banc). Significantly, under the Act, the plaintiff need not demonstrate that the jobs in question are identical; she must show only that the jobs are substantially equal.

Because we are reviewing an appeal from the grant of summary judgment, the question is whether, viewing the evidence in the light most favorable to Stanley, and resolving all inferences in her favor, a genuine issue of material fact exists regarding the substantial equality of the jobs. *See, e.g., Cordova v. State Farm Ins. Cos.,* 124 F.3d 1145, 1150 (9th Cir.1997). This analysis is quite different from that conducted by our court in *Stanley I,* 13 F.3d 1313 (9th Cir.1994), where we considered an appeal from the denial of a mandatory preliminary injunction.

Circuit courts employ a two-step "substantially equal" analysis in Equal Pay Act cases. In *Brobst v. Columbus Srvs. Int'l,* 761 F.2d 148, 156 (3d Cir.1985), the Third Circuit described this approach, writing that "[t]he crucial finding on the equal work issue is whether the jobs to be compared have a 'common core' of tasks, i.e. whether a significant portion of the two jobs is identical." When a plaintiff establishes such a "common core of tasks," the court must then determine whether any additional tasks, incumbent on one job but

not the other, make the two jobs "substantially different." *Id.* Both the Seventh and Fourth Circuits have also adopted this approach to Equal Pay Act cases. *See Fallon v. State of Illinois,* 882 F.2d 1206, 1209 (7th Cir.1989); *Brewster v. Barnes,* 788 F.2d 985, 991 (4th Cir.1986).

Here, we may assume that the men's and women's coaching jobs share a common core of tasks. Garrett—U.S.C.'s athletic director and a defendant in this case—has acknowledged that the women's and men's coaches "have the same basic responsibilities" with regard to recruiting athletes and administering the basketball programs. In his declaration, Garrett also stated:

> Both the women's and men's head basketball coaches have the following general duties and responsibilities: basketball program; coaching and discipline of team members; general supervision over the personal and academic lives of the student athletes; and supervision over assistant coaches, part-time coaches and other athletic department personnel involved in the women's and men's basketball programs.

The parties are in serious dispute, however, as to whether the additional responsibilities borne by the men's coach, but not by the women's coach, suffice to make the two jobs "substantially different." *See, e.g., Fallon,* 882 F.2d at 1209. The defendants point out that the men's coach bears greater revenue generating responsibilities, that he is under greater media and spectator pressure to produce a winning program, and that he actually generates more revenue for the University.

Stanley claims that the differences between the two jobs are attributable to previous gender-based decisions on the part of the University. Essentially, Stanley claims that the differences between the two jobs result from the University's historically disparate treatment of male and female teams; namely, its decisions to invest in and promote the men's program more than the women's program. She

then claims that because the differences between the jobs derive from previous gender-based decisions on the part of the University, the differences cannot be relied on to determine that the jobs are "substantially different." [1]

The University, on the other hand, argues that the differences between the two jobs are not attributable to anything it has done or failed to do in the past. According to USC, the reason that women's basketball does not generate the same amount of revenue as men's basketball, and that the women's coach is not under the same pressure as the men's coach, is that there simply is not a sufficient spectator or media market for women's basketball games. Accordingly, it contends that the differences in responsibilities in the two jobs legitimately suffice to make them "substantially different."

■ We need not decide which party is correct regarding the reason for the differences that exist. Even assuming that Stanley has succeeded in raising a genuine issue of fact as to this question, the University is entitled to summary judgment on other grounds. A defendant may rebut a prima facie case by showing that the disparity in pay is a "differential based on any ... factor other than sex." 29 U.S.C. § 206(d)(1). Defendants here assert an affirmative defense (that is, a nondiscriminatory reason for the pay differential) based on Stanley and Raveling's markedly disparate levels of experience and qualifications. The record convincingly supports their claim. When Raveling began coaching at U.S.C., he had thirty-one years of coaching experience. He had been the coach of the men's Olympic basketball team. He had been *twice* named national coach of the year, and *twice* named PAC–10 coach of the year. On top of his coaching experience, Raveling also had nine years of marketing and promotional experience, and was the author of several books on basketball. When Stanley started coaching at U.S.C., three years after Raveling became head coach of the men's team, she had seventeen years of experience coaching basketball, or *fourteen years less experience* than Raveling. She never coached an Olympic team. She had no marketing or promotional experience other than that she gained as a coach. She had never published a book about basketball.[2]

The EEOC Notice cited above, on which *the plaintiff* relies extensively, recognizes this type of affirmative defense, stating that "[s]uperior experience, education, and ability may justify pay disparities if distinctions based on these criteria are not gender based." EEOC Notice at 23. In *Stanley I,* moreover, we wrote that "[e]mployers may reward professional experience and education without violating the EPA." *Stanley I,* 13 F.3d at 1322. Coaches with substantially more experience and significantly superior qualifications may, of course, be paid more than their less experienced and qualified counterparts, even when it is the male coach who has the greater level of experience and qualifications. By alleging that the pay differential at issue here was due to Stanley and Raveling's markedly different levels of experience and qualifications, the defendants have proffered a factor "other than sex," 29 U.S.C. § 206(d)(1), to explain the differ-

---

1. In a recent EEOC Notice on sex discrimination in the compensation of sports coaches in educational institutions, *see EEOC Notice No. 915.002,* the EEOC states explicitly that "pay discrimination cannot be justified if the differences relied on for the proposition that the two jobs are not substantially equal are themselves based on discrimination in the terms and conditions of employment." *See Notice* at 5 (citing *Burkey v. Marshall County Bd. Educ.,* 513 F.Supp. 1084, 1092 (N.D.W.Va. 1981)).

2. Michael McGee, USC's athletic director at the time Raveling and Stanley were hired, testified that, due to his stellar qualifications and experience, Raveling was the *only* candidate considered for the men's coaching job. Stanley, on the other hand, was hired only after two other candidates turned down the women's coaching job.

ence in pay. *See also, Harker v. Utica College of Syracuse Univ.*, 885 F.Supp. 378 (N.D.N.Y.1995) (nine year experience differential between women's and men's basketball coaches justifies pay differential).

Garrett's testimony, moreover, supports the University's explanation. In explaining the disparity between Raveling and Stanley's salaries, Garrett referred extensively to the coaches' divergent levels of experience and differences in qualifications. He stressed Raveling's thirty-one years of experience, his experience as an Olympic coach, his nine years in marketing and promotion positions, and his authorship of several books on basketball. Garrett highlighted the fact that Raveling had been twice honored as national coach of the year, twice voted PAC–10 coach of the year, and was "widely recognized as one of the top basketball recruiters in the nation." Garrett then contrasted Stanley's lesser experience and qualifications. While he mentioned some of Stanley's accomplishments, he pointed out that she had only seventeen years coaching experience, had never coached an Olympic team, and had never authored any books on basketball.[3]

▉▉▉ Where the defendant demonstrates that a pay differential was based on a factor other than sex, the employee may prevail by showing that the employer's proffered nondiscriminatory reason is a "pretext for discrimination." *Maxwell v. City of Tucson*, 803 F.2d 444, 446 (1986). On this appeal, Stanley bears the burden of demonstrating a material fact regarding pretext in order to survive summary judgment. *See, e.g., Texas Dep't of Communi-*

ty Affairs v. Burdine, 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

▉▉▉ Stanley's pretext argument, however, fails to meet even this minimal burden. In her briefs, Stanley disputes that Raveling had greater qualifications and experience than she.[4] For example, Stanley states that "Mr. Raveling does not have substantially different qualifications and experience than Ms. Stanley." Unsupported allegations made in briefs are not sufficient, however, to defeat a motion for summary judgment. *See, e.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Stanley has conspicuously failed, moreover, to present any meaningful evidence in support of her claim that she and Raveling had comparable levels of experience. Stanley points first to her deposition testimony that she was responsible for securing donors for the women's team. Such evidence, while important in assessing Stanley's revenue raising responsibilities, says nothing of her relative level of experience. She next points to her testimony that she worked briefly as a color analyst on a Philadelphia cable station. Again, this evidence does not undermine the University's claim that Raveling possessed far greater experience as a coach and marketer than Stanley.[5] Stanley also argues that Raveling's marketing abilities are in dispute because "Raveling was not able to successfully promote nor market a summer basketball [camp] during his entire employment at USC." However, Raveling's ability to market this camp sheds no light on his previous *experience* in marketing. Stanley, moreover, does not dispute the

---

3. Garrett concluded his explanation by noting that Raveling, the more experienced and qualified coach, had to be "sought out by USC and lured away from his then-current employer, the University of Iowa, to accept the head coaching job of the men's basketball team at USC." In contrast, Garrett continued, Stanley, the less experienced and qualified coach, "initiated contact with USC and actively pursued the employment opportunity."

4. Stanley does not argue, however, that the University did not, in fact, rely on experience and qualification levels when setting the coaches' salaries.

5. Stanley also contends that Raveling misrepresented to the district court that he was the author of several "bestsellers" on the subject of basketball. Stanley, conspicuously, does not dispute the fact that she has published no books on this or any other subject, while Raveling indisputably has.

fact that Raveling has nine years of experience in marketing, while she had no work experience outside coaching.

In the end, therefore, we are left with these *undisputed* facts: Stanley had far less relevant experience and qualifications than Raveling. She had fourteen years less experience as a basketball coach. She, unlike Raveling, never coached the Olympic team. She had no marketing experience outside coaching. She had never written any books on basketball. Accordingly, Stanley has failed to raise a genuine issue of fact as to Raveling's markedly "superior experience," and qualifications. *EEOC Notice* at 23. In short, she has failed to raise a genuine issue of fact as to the University's non-discriminatory reason for paying Raveling a higher salary.

Accordingly, we affirm the district court's decision to grant the defendants' motion for summary judgment on the Equal Pay Act claim.

### B. FEHA, Title IX, and California Constitution

■ Stanley also claims that the defendants' conduct violated three other statutory provisions. First, she asserts that the failed contract negotiations constituted a violation of the Fair Employment Housing Act which provides that it is unlawful for an employer to "discriminate against the person in compensation or in terms, conditions or privileges of employment" on the basis of gender. Cal. Gov't Code § 12940(a). Second, she claims a violation of Title IX of the Civil Rights Act of 1972, 20 U.S.C. § 1681(a), which provides in relevant part:

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any educational program or activity receiving Federal financial assistance. . . .

Third, she claims a violation of Article I, § 8 of the California Constitution which provides:

> A person may not be disqualified from entering or pursuing a business, profession, vocation, or employment because of sex. . . .

Because, as we have held above, Stanley fails to show any discriminatory conduct on the part of the defendants, all of these claims fail as well.

### C. Retaliation

■ Stanley's retaliation claim fails because, as the district court concluded, the evidence does not support her assertion that USC "retaliated" against her because she insisted that USC honor Garrett's "offer" of April 20, 1993, filed a discrimination claim with Department of Fair Employment and Housing, and filed a complaint in state court. USC's offer of a multi-year contract remained open long after Stanley insisted that she be paid an amount equal to Raveling's salary. USC did not "discharge" Stanley in response to any of her arguably protected activity. Rather, Stanley's contract expired and she was unable to renegotiate a new contract acceptable to her. The district court did not err in granting summary judgment for USC on this claim.

### D. *Tameny* Claim

■ Stanley claims that she was terminated, in violation of public policy, in response to her complaints about sex discrimination and her demands for equal pay. *See Tameny v. Atlantic Richfield Co.*, 27 Cal.3d 167, 164 Cal.Rptr. 839, 610 P.2d 1330 (Cal.1980). However, as explained above, Stanley failed to present evidence that she was "terminated" from her coaching position, either directly or constructively, after her complaints. The evidence establishes that her contract expired and she was unable to renegotiate a new contract with terms acceptable to her. The district court properly granted summary judgment on this claim.

## II. Contract Claims

We review the district court's grant of summary judgment on the contract claims de novo. *Margolis,* 140 F.3d at 852. As an initial matter, we conclude that the district court was correct to grant summary judgment for Garrett on the contract claims, because he acted merely as USC's agent and was not a party to the contract. We also affirm the district court's grant of summary judgment in favor of USC on all three contract claims.

### A. Express Employment Contract

Stanley contends that an express contract was formed at the April 20, 1993 meeting between her and Garrett, which contract called for her to receive a salary equal to that earned by Raveling. However, Stanley herself stated in a declaration that at that meeting Garrett told her, in response to her request for a salary equal to Raveling's, "that USC did not have the money to pay [Stanley] that amount at that time. He indicated that he would get back to [Stanley] with an offer of a multi-year contract." This is consistent with Stanley's deposition testimony as well.

The district court was correct to conclude that no rational trier of fact could have concluded from this evidence that there was a meeting of the minds between Garrett and Stanley on the terms Stanley proposed. Summary judgment was properly granted.

### B. Implied–in–Fact Employment Contract

Under California law, an implied contract is one "the existence and terms of which are manifested by conduct." Cal. Civil Code § 1621. An implied contract "consists of obligations arising from a mutual agreement and intent to promise where the agreement and promise have not been expressed in words." *Silva v. Providence Hosp. of Oakland,* 14 Cal.2d 762, 773, 97 P.2d 798 (1939).

Stanley contends that USC led her to believe that, if she produced a successful basketball program, she would be awarded a multi-year contract with equal pay for equal work. However, as the district court noted, the express terms of Stanley's contract precluded such a modification to the terms of her employment. Paragraph 12 of the employment contract provided that no prior or contemporaneous agreements not set forth in the written agreement would have any force or effect, while Paragraph 14 precluded any modification of the agreement unless it was in writing and signed by both parties. Therefore, the district court was correct to conclude that no rational trier of fact could conclude that Stanley had a reasonable belief that her express written contract was modified such that she was guaranteed a multi-year contract so long as she performed her job well. *See Haggard v. Kimberly Quality Care, Inc.,* 39 Cal. App.4th 508, 46 Cal.Rptr.2d 16, 21–24 (1995) (plaintiff cannot rely on pre-contract implied terms when contract was integrated; plaintiff cannot rely on post-contract implied terms when contract required all modifications be written). Summary judgment was properly granted.

### C. Good Faith and Fair Dealing

Stanley contends that USC breached an implied covenant of good faith and fair dealing when USC failed to pay her a salary equal to Raveling's, when it failed to negotiate in good-faith to renew the contract, and when it refused to reduce to writing the "contract" that Garrett entered into on USC's behalf at the April 20, 1993 meeting. However, a claim for breach of an implied good faith covenant depends upon the existence of a valid contract. *Careau & Co. v. Security Pacific Bus. Credit, Inc.,* 222 Cal.App.3d 1371, 272 Cal.Rptr. 387, 397 (1990). Thus, because Stanley had no valid contract based upon the April 20, 1993 meeting, her claim fails with respect to that alleged contract.

■ Moreover, the record evidence does not support Stanley's claim that USC acted in bad faith with respect to the written contract that expired June 30, 1993. USC paid Stanley according to the terms of that contract, and no rational factfinder could conclude that USC acted in bad faith during negotiations for a new contract. Indeed, USC offered Stanley a new contract at a substantially higher salary than her previous contract provided, and engaged in repeated negotiations in an attempt to reach an agreement. Bad faith cannot be inferred from the mere fact that Stanley was unhappy with USC's proposed terms. Summary judgment was properly granted.

### III. Disqualification of Judge Davies

■ Stanley contends that it was an abuse of discretion for Judge Collins to deny Stanley's motion to recuse Judge Davies for gender bias. Judge Collins was correct to conclude, in denying Stanley's recusal motion, that Stanley had not supported her allegations of gender bias on the part of Judge Davies. The only evidence that Stanley can point to in support of her bias allegation is Judge Davies' rulings on defendants' summary judgment motion, and general allegations about gender discrimination in sports and in the judicial system. General observations about gender discrimination do not support the disqualification motion, and Judge Davies' rulings in Stanley's case do not present the rare and extreme circumstances in which a judge may be recused on the basis of his rulings alone. *Liteky v. United States*, 510 U.S. 540, 556, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994).

### IV. Re-taxing Costs

■ Fed.R.Civ.P. 54(d)(1) provides that "costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs." Thus, Rule 54(d) creates a presumption in favor of awarding costs to prevailing parties, and it is incumbent upon the losing party to demonstrate why the costs should not be awarded. *National Info. Servs., Inc. v. TRW, Inc.*, 51 F.3d 1470, 1471–72 (9th Cir.1995).

At the conclusion of this litigation, the district court awarded costs to defendants as "prevailing parties" pursuant to Rule 54(d)(1). Stanley made a motion to re-tax costs, arguing: (1) that many of the costs were excessive; (2) that she in fact was a "prevailing party" in the litigation due to her success in procuring the TRO in Superior Court; (3) that forcing civil rights plaintiffs, like herself, to pay costs will have the chilling effect of dissuading other civil rights plaintiffs from bringing meritorious suits; (4) that she is unable to pay the costs without being rendered indigent; and (5) that Judge Davies exhibited gender-bias toward Stanley in the underlying proceedings.

■ The district court determined that Stanley's arguments did not overcome the presumption in favor of taxing costs to the losing party. We review the district court's denial of a motion to re-tax costs for an abuse of discretion. *Schwarz v. Secretary of Health and Human Servs.*, 73 F.3d 895, 900 (9th Cir.1995). We conclude that the district court abused its discretion, particularly based on the district court's failure to consider two factors: Stanley's indigency, and the chilling effect of imposing such high costs on future civil rights litigants.

■ District courts should consider the financial resources of the plaintiff and the amount of costs in civil rights cases. *See e.g., Wrighten v. Metropolitan Hosps., Inc.*, 726 F.2d 1346, 1358 (9th Cir.1984); *Moore v. Hughes Helicopters, Inc.*, 708 F.2d 475, 486 (9th Cir.1983). Stanley's argument that payment of the costs would render her indigent is compelling. Indigency is a factor that the district court may properly consider in deciding whether to award costs. *See National Org. for Women v. Bank of California*, 680 F.2d 1291, 1294 (9th Cir.1982); *McGill v.*

*Faulkner,* 18 F.3d 456, 459 (7th Cir.1994). The mere fact that Stanley had not obtained employment at the time of the filing of the cost bill is persuasive evidence of the possibility she would be rendered indigent should she be forced to pay $46,-710.97—the total amount that the district court awarded against her. The pertinent time, of course, is the time the costs were initially taxed; whatever may have occurred since that time is of no consequence.

Furthermore, the imposition of such high costs on losing civil rights plaintiffs of modest means may chill civil rights litigation in this area. While we reject Stanley's claims, we also note that they raise important issues and that the answers were far from obvious. Without civil rights litigants who are willing to test the boundaries of our laws, we would not have made much of the progress that has occurred in this nation since *Brown v. Board of Educ.,* 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954).

We therefore hold that the district court abused its discretion in failing to re-tax costs awarded to defendants and remand to the district court for reconsideration in light of these factors.

## CONCLUSION

We affirm the district court's grant of summary judgment in favor of USC and Garrett and its denial of the motion for disqualification. However, we remand its denial of the motion to re-tax costs. We deny appellees' motions for sanctions. Each side shall bear its own costs on appeal.

PREGERSON, dissenting:

By focusing on the differences between Stanley's and Raveling's qualifications, the majority skips over the many ways in which gender discrimination insidiously affected the University's treatment of the women's basketball program and Stanley as its Head Coach. The University's half-hearted promotion of the women's basketball program, its intensive marketing of the men's basketball program, and the formidable obstacles Stanley faced as a woman athlete in a male-dominated profession contributed to this disparate treatment.

It is hard for me to square these realities with the majority's ruling denying Stanley relief without a trial.

Therefore, I dissent.