**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

MARIA ESCRIBA,
*Plaintiff-Appellant-Cross-Appellee*,

v.

FOSTER POULTRY FARMS, INC.,
*Defendant-Appellee-Cross-Appellant*.

Nos. 11-17608
12-15320

D. C. No.
1:09-cv-01878-LJO- MJS

OPINION

Appeal from the United States District Court
for the Eastern District of California
Lawrence J. O'Neill, District Judge, Presiding

Argued and Submitted
November 7, 2013—San Francisco, California

Filed February 25, 2014

Before: Sidney R. Thomas, Ronald Lee Gilman,[*] and
Johnnie B. Rawlinson, Circuit Judges.

Opinion by Judge Gilman

---

[*] The Honorable Ronald Lee Gilman, Senior Circuit Judge for the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

## SUMMARY[**]

### Labor Law

The panel affirmed the district court's judgment, after a jury trial, in favor of the defendant in an action under the Family and Medical Leave Act and its California equivalent.

The panel held that the district court did not err in denying the plaintiff's motion for summary judgment because an employee can affirmatively decline to use FMLA leave, even if the underlying reason for seeking leave would have invoked FMLA protection. The panel held that the district court did not err in denying the plaintiff's motion for judgment as a matter of law because, viewing the evidence in the light most favorable to the jury's verdict, there was substantial evidence that the plaintiff elected not to take FMLA leave. In addition, the district court did not err in admitting evidence about the plaintiff's prior FMLA leave.

On the defendant's cross-appeal, the panel held that the district court did not abuse its discretion in declining to tax costs.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Robert Borton, Elizabeth Kristen (argued), Sharon Terman (argued), The Legal Aid Society-Employment Law Center, San Francisco, California, for Plaintiff-Appellant/Cross-Appellee.

Julia A. Follansbee, Follansbee & Associates, Bend, Oregon; Carmine R. Zarlenga (argued), Michael B. Kimberly, Mayer Brown LLP, Washington, D.C., for Defendant-Appellee/Cross-Appellant.

Jonathan J. Frankel, Steese, Evans & Frankel, P.C.; Sarah Crawford, Abigail Cook-Mack, National Partnership for Women & Families, Washington, D.C., for Amicus Curiae National Partnership for Women & Families, A Better Balance, California Women's Law Center, Equal Rights Advocates, National Employment Lawyers Association, National Women's Law Center, and 9to5, National Association of Working Women.

---

**OPINION**

GILMAN, Senior Circuit Judge:

Maria Escriba worked in a Foster Poultry Farms, Inc. (Foster Farms) processing plant in Turlock, California for 18 years. She was terminated in 2007 for failing to comply with the company's "three day no-show, no-call rule" after the end of a previously approved period of leave, which she took to care for her ailing father in Guatemala. Escriba subsequently filed suit under the Family and Medical Leave Act (FMLA) and its California equivalent.

The parties dispute the characterization of Escriba's request for a two-week period of leave. Escriba claims that her termination is an unlawful interference with her rights under the FMLA. Foster Farms responds that, although Escriba provided an FMLA-qualifying reason for taking leave, she explicitly declined to have her time off count as FMLA leave. The district court characterized the case as a classic "he said, she said" matter focused on what Escriba told her supervisors. Escriba's claims therefore proceeded to a jury trial in 2011.

Before Escriba's claims were submitted to the jury, both parties moved for judgment as a matter of law (JMOL). The district court denied Foster Farm's motion and took Escriba's under advisement, pending the jury's determination. After the jury returned a verdict in favor of Foster Farms, Escriba renewed her motion for JMOL and requested a new trial. The district court denied both motions.

Foster Farms, as the prevailing party, then moved to tax costs against Escriba. The district court declined to do so.

Both parties have timely appealed the respective adverse rulings against each of them. For the reasons set forth below, we **AFFIRM** the judgment of the district court on all issues.

## I.  BACKGROUND

### A.  Factual background

On November 19, 2007, Escriba met with her immediate supervisor, Linda Mendoza, to request time off to care for her ailing father in Guatemala. This meeting occurred four days before Escriba left for Guatemala on November 23 and

approximately three weeks after she learned of her father's illness. Before Escriba's meeting with Mendoza, Escriba's daughter had purchased round-trip airfare for Escriba with a return date of December 27, 2007. This month-plus gap between November 23 and December 27 obviously conflicts with Escriba's request for a two-week vacation. At trial, Escriba explained that the discrepancy was simply the result of her daughter "pa[ying] for my ticket for that time. If [Foster Farms] did not give me more time [off], I would call the airlines so that I could come back sooner."

Escriba maintains that, on November 19, she asked Mendoza for time off, requesting "Linda, please for me, Linda, for me, vacation." She also claims that she told Mendoza that her "father is no good. . . . [and] is in [a] hospital in Guatemala." After hearing this, Mendoza apparently responded: "Okay, Maria, you vacation," after which Escriba "left it at that and [] went to work."

A short time later, Mendoza gave Escriba a piece of paper detailing the leave request and said: "Maria, two week[s] of vacation for you." Escriba maintains that she responded: "Please one week or two week free for me," to which Mendoza replied: "No, Maria." According to Escriba, the phrase "one week or two week free for me" meant that she sought unpaid leave in addition to the two-week paid vacation. This conversation between Escriba and Mendoza occurred in English because Mendoza does not speak Spanish.

Mendoza testified that she followed up her conversation with Escriba two days later, on November 21. This time Mendoza included Alfonso Flores, another Foster Farms supervisor, who acted as an interpreter. Mendoza testified

that she asked Flores to act as an interpreter "to make sure [Escriba] could understand what I was asking." Flores then asked Escriba if "she need[ed] more time" in Guatemala to care for her father, to which Escriba responded "no." After hearing that Escriba was not requesting additional time in Guatemala, Mendoza asked Flores to repeat the question. Escriba again answered "no." Flores corroborates Mendoza's testimony, confirming that Escriba twice stated that she did not need or want more than two weeks of leave. Escriba herself admitted during cross-examination that she requested the leave from Mendoza (and not from Foster Farms's Human Resources Department) because she intended to request vacation time, not "family leave to go to Guatemala."

After hearing Escriba refuse additional leave, Mendoza filled out Escriba's vacation paperwork. Mendoza then told Escriba, in English, that Escriba would need to visit the Human Resources Department if she later decided to request more than two weeks of leave. By directing Escriba to Human Resources, Mendoza believed that she "was telling [Escriba] if the vacation that [Mendoza was] granting [was] not sufficient, then [Escriba had to] go to HR and discuss it with them further."

Escriba testified that she then visited Ed Mendoza, the Foster Farms facility superintendent (who is not related to Linda Mendoza) because he spoke Spanish. She handed over her vacation slip and explained: "I'm on my way to Guatemala . . . [b]ecause my dad is very ill." Escriba allegedly revealed that "I only am going with two weeks vacation" before adding that "I wanted to know if [you] could do me a favor and give me one or two weeks more leave." According to Escriba, Ed Mendoza said that he could not

provide additional leave, but told her to bring a doctor's note when she returned to work.

Ed Mendoza's account of his conversation with Escriba differs in several material respects. He testified that Escriba asked "strictly" for "vacation time" and not "family leave." When Escriba asked Ed Mendoza what she needed to do if she was unable to return by December 10, 2011, Ed Mendoza testified that he told her "to fax or send a note or some documentation to the human resources office." He did not instruct Escriba regarding her rights and obligations under the FLMA or take any steps to designate her time off as FMLA leave.

After securing two weeks of leave, Escriba traveled to Guatemala to care for her father. She testified that, shortly after arriving, she decided that returning to work on December 10, 2007 would be impractical. Escriba said on direct examination that she attempted to contact her supervisors at Foster Farms to extend her leave, but on cross-examination contradicted herself:

> Question: Why didn't you call your employer to let them know that you would not be coming back by the 10th?
>
> Answer: I just couldn't think about it. I didn't remember.

*Escriba v. Foster Poultry Farms, Inc.*, No. 1:09-CV-1878, 2011 WL 4565857, at *8 (E.D. Cal. Sept. 29, 2011). Escriba also conceded on cross-examination that she had periodic contact during this time frame with her husband, who also

worked at Foster Farms, yet she never asked him to contact the company's Human Resources Department on her behalf:

> Question: While you were at Guatemala in November and December of 2007, you talked to your husband on the telephone; isn't that correct?
>
> Answer: Yes.
>
> Question: And your husband was working at Foster Farms at that time; is that right?
>
> Answer: Yes.
>
> . . .
>
> Question: Does he use the same office of personnel that you use?
>
> Answer: Yes.
>
>> Question: So while you were in Guatemala and talking to your husband from time to time, did you ask him to go to the department of personnel at Foster Farms and tell them on your behalf that you would not be coming back?
>
> Answer: No.

*Id.*

After failing to make contact, Escriba did not speak to anyone affiliated with Foster Farms about extending her leave until she spoke to her union representative on December 21, 2007. This conversation occurred 16 days after she was scheduled to return to work. The union representative informed Escriba that she would likely be terminated under Foster Farms's "three day no-show, no-call rule." Under this policy, an employee is automatically terminated if he or she is absent for a period of three work days without notifying the company or without seeking a leave of absence.

The "three day no-show, no-call rule" was not the only Foster Farms policy discussed at trial. Foster Farms also introduced its employee-leave policy that requires an employee who requests FMLA-protected leave to first exhaust paid vacation time. The initial paid leave runs concurrently, counting against both an employee's balance of vacation time and his or her FMLA-protected leave. John Dias, a labor relations manager with Foster Farms, testified that if an employee elects to take vacation time and expressly declines FLMA-protected leave, the company "can't force [the employee] to take a leave if they're requesting to take the availability of their vacation because that would be reducing a benefit that [the employee] would have." By first exhausting paid vacation time, an employee thus preserves the balance of any and all available FMLA time.

## B. Procedural background

Escriba filed suit on October 26, 2009, alleging violations of the FMLA, 29 U.S.C. § 2601 *et seq.*, the California Family Rights Act (CFRA), Cal. Gov't Code § 12945.2 *et seq.*, and California public policy. This court has previously concluded that identical standards apply to the FMLA and to the CFRA,

which means that violations of either statute "constitute a violation of [California] public policy." *Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1138 (9th Cir. 2003); *see also id.* at 1132 n.4. We will therefore refer to all three causes of action as arising under the FMLA.

The case proceeded through discovery, after which both parties filed motions for summary judgment. Summary judgment was denied because the district court determined that there were genuine issues of material fact about whether Escriba invoked or declined FMLA protections when she spoke to Linda Mendoza and later to Ed Mendoza about leaving for Guatemala, and about whether Escriba's notice was sufficient to trigger the FMLA's protective provisions.

A six-day trial occurred in July 2011. At the close of all the evidence, both parties moved for JMOL. The district court denied Foster Farms's motion and reserved judgment on Escriba's motion pending the jury's verdict. After a short deliberation, the jury returned a verdict in favor of Foster Farms.

The district court denied Escriba's renewed motion for JMOL, concluding that substantial evidence supported the jury's finding that Escriba had "knowledge of FMLA leave and how to invoke it," yet unequivocally declined to take more time or to request FMLA leave. *Escriba*, 2011 WL 4565857, at *4, *6. Escriba, in other words, "was given the option and prompted to exercise her right to take FMLA-leave, but . . . unequivocally refused to exercise that right." *Id.* at *7.

After the denial of Escriba's post-trial motions, Foster Farms sought to recover $21,703 for the costs of litigating the

five-day trial.  Although the clerk of court lowered the costs to $13,958, the district court rejected even this reduced total and declined to tax costs in any amount.  Both parties have timely appealed.

## II.  ANALYSIS

## A.  Escriba's motion for JMOL

### 1.  *Standard of review*

We review de novo a district court's denial of a renewed motion for JMOL.  *Harper v. City of Los Angeles*, 533 F.3d 1010, 1021 (9th Cir. 2008).  A renewed motion for JMOL is properly granted "if the evidence, construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict."  *Pavoa v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002).  A jury's verdict must be upheld if it is supported by substantial evidence that is adequate to support the jury's findings, even if contrary findings are also possible.  *Harper*, 533 F.3d at 1021.

Reviewing a renewed motion for JMOL requires scrutiny of the entire evidentiary record, but the court "must not weigh the evidence, [and instead] should simply ask whether the [nonmoving party] has presented sufficient evidence to support the jury's conclusion."  *Id.*  In so doing, the court must draw all reasonable inferences in favor of the nonmoving party and "disregard all evidence favorable to the moving party that the jury is not required to believe."  *Id.*

### 2. The denial of Escriba's motion for summary judgment

Escriba argues that the district court erred by not granting her motion for summary judgment on her FMLA-interference claim. According to Escriba, there is no dispute that she told both Linda Mendoza and Ed Mendoza that she needed time off to care for her ailing father, which Escriba contends automatically entitled her to FMLA protections. She also argues that the jury's verdict is contrary to the evidence offered at trial, evidence that she claims clearly established Foster Farms's interference with her rights under the FMLA.

As a threshold matter, we generally do "not review a denial of a summary judgment motion after a full trial on the merits." *Banuelos v. Constr. Laborers' Trust Funds for S. Cal.*, 382 F.3d 897, 902 (9th Cir. 2004). "This general rule, however, does not apply to those denials of summary judgment motions where the district court made an error of law that, if not made, would have required the district court to grant the motion." *Id.* (internal citation omitted). Here, Escriba argues that the district court erred as a matter of law by entertaining Foster Farms's "legally impossible" theory of the case that she affirmatively declined to take FMLA leave. She claims that, absent this theory, she would have been entitled to summary judgment on her FMLA-interference claim.

### 3. There was no error of law

To make out a prima facie case of FMLA interference, an employee must establish that "he was eligible for the FMLA's protections, (2) his employer was covered by the FMLA, (3) he was entitled to leave under the FMLA, (4) he

provided sufficient notice of his intent to take leave, and (5) his employer denied him FMLA benefits to which he was entitled." *Sanders v. City of Newport*, 657 F.3d 772, 778 (9th Cir. 2011) (internal quotation marks omitted). Whether the district court erred in entertaining Foster Farms's contention that Escriba did not intend to take FMLA leave (factor 4) is the dispositive issue in this case.

Turning to that issue, Escriba argues that Foster Farms was required to designate her leave as FMLA-protected and to provide her with a notice of her rights under the FMLA regardless of whether she expressly declined such a designation. Escriba maintains, in other words, that refusing to exercise FMLA rights as soon as they are available is "legally impossible." Escriba raised similar arguments in both her pretrial motion for summary judgment and in her preverdict motion for JMOL, so this issue is properly before us despite Foster Farms's contention to the contrary. *See United States v. Pallares-Galan*, 359 F.3d 1088, 1095 (9th Cir. 2004) ("[T]he Supreme Court has made clear [that] it is claims that are deemed waived or forfeited, not arguments.").

Turning now to the merits of this issue, the FMLA does not expressly state whether an employee may defer the exercise of FMLA rights under the statute. The pertinent FMLA regulations promulgated by the Department of Labor in 1995, however, provide some guidance. After an employee alerts the employer of desiring to take leave for a reason that would qualify under the FMLA, the "employer will be expected to obtain any additional required information through informal means." 29 C.F.R. § 825.303(b). During this "informal" process, the employee will be expected to "provide more information." *Id.*

The "employee need not expressly assert rights under the FMLA or even mention the FMLA," 29 C.F.R. § 825.302(c), but the employer "should inquire further of the employee if it is necessary to have more information about *whether FMLA leave is being sought by the employee*, and to obtain the necessary details of the leave to be taken," *id.* (emphasis added). *Cf. Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1130–31 (9th Cir. 2001) (holding that a company whose employee provided two doctor's notes regarding her absences "was therefore placed on notice that the leave might be covered by the FMLA, and could have inquired further to determine whether the absences were likely to qualify for FMLA protection").

An employer's obligation to ascertain "whether FMLA leave is being sought" strongly suggests that there are circumstances in which an employee might seek time off but intend not to exercise his or her rights under the FMLA. And a compelling practical reason supports this conclusion. Holding that simply referencing an FMLA-qualifying reason triggers FMLA protections would place employers like Foster Farms in an untenable situation if the employee's stated desire is *not* to take FMLA leave. The employer could find itself open to liability for forcing FMLA leave on the unwilling employee. *See, e.g.*, *Wysong v. Dow Chem. Co.*, 503 F.3d 441, 449 (6th Cir. 2007) (noting that "[a]n involuntary-leave claim," alleging that an "employer forces an employee to take FMLA leave," is "really a type of interference claim"). We thus conclude that an employee can affirmatively decline to use FMLA leave, even if the underlying reason for seeking the leave would have invoked FMLA protection. *See, e.g.*, *Ridings v. Riverside Med. Ctr.*, 537 F.3d 755, 769 n.3 (7th Cir. 2008) ("If an employee *does not wish to take FMLA leave* but continues to be absent from

work, then the employee must have a reason for the absence that is acceptable under the employer's policies, otherwise termination is justified." (emphasis added)).

Escriba essentially argues that affirmatively declining FMLA leave is tantamount to waiving it, and she points to a regulation providing that "[e]mployees cannot waive, nor may employers induce employees to waive, their rights under FMLA." 29 C.F.R. § 825.220(d). But whatever support this regulation provides to Escriba is eroded by another provision, which explains that "waiver" in the context of the FMLA means that an employee "cannot 'trade off' the right to take FMLA leave against some other benefit offered by the employer" as part of a collective bargaining agreement or some other form of negotiation. *Id.* Foster Farms's contention, however, has never been that Escriba "trade[d] off" her FMLA rights; rather, the company argued to the jury that Escriba affirmatively declined to exercise her FMLA rights in order to *preserve* her leave for future use.

As this court recognized in a case involving credit card transactions, "[w]aiver is the voluntary relinquishment of a known right." *Hauk v. J.P. Morgan Chase Bank USA*, 552 F.3d 1114, 1119 (9th Cir. 2009) (internal quotation marks omitted); *see also Black's Law Dictionary* 1574 (7th ed. 1999) (defining waiver as "[t]he voluntary relinquishment or abandonment . . . of a legal right or advantage"). But affirmatively declining the present exercise of a right in order to preserve it for the future is fundamentally different from permanently relinquishing that right. Foster Farms's theory of the case is thus not "legally impossible." The district court therefore did not err in denying Escriba's motion for summary judgment on the basis that Foster Farms's "cited evidence demonstrates that [Escriba] was given the option

and prompted to exercise her right to take FMLA[]leave, but that she unequivocally refused to exercise that right." *Escriba*, 2011 WL 4565857, at *7.

### 4.  *Substantial evidence supports the jury's verdict*

As to whether substantial evidence supported the jury's verdict, we note that Escriba did not object at trial to—nor does she challenge on appeal—the verdict form or the jury instruction that specifically referred to Escriba's intent.  The verdict form directed the jury to decide whether Escriba "provided sufficient notice of her intent to take [FMLA] leave."  Moreover, the district court used the identical language in its oral instructions to the jury.  The inclusion of "intent" is consistent with the boilerplate standard for FMLA-interference claims in this circuit.  *See Sanders v. City of Newport*, 657 F.3d 772, 778 (9th Cir. 2011) (stating that an employee must establish that "he provided sufficient notice of his intent to take leave").

Viewing the evidence in the light most favorable to the jury's verdict, as we must do in reviewing a motion for JMOL, there is substantial evidence that Escriba elected not to take FMLA leave.  After Linda Mendoza's initial meeting with Escriba on November 19, 2007, Mendoza met with Escriba and an interpreter, twice asking if Escriba needed more time in Guatemala.  Escriba twice answered "no."  Mendoza testified that she then told Escriba to visit the Human Resources Department if she later decided to request more than two weeks of leave.

A jury hearing this evidence could conclude that Linda Mendoza had "inquire[d] further of the employee . . . about whether FMLA leave [was] being sought," 29 C.F.R.

§ 825.302(c), and that Escriba's two "no" responses clearly indicated that she did not intend to take FMLA leave. Indeed, the fact that Escriba approached Mendoza in the first place rather than going directly to the Human Resources Department is in itself telling because, as Escriba conceded, Mendoza had approved all of Escriba's vacation requests in the past, whereas Human Resources had handled all of her requests for FMLA leave.

In addition, other witnesses corroborated Linda Mendoza's testimony that Escriba did not intend to take FMLA leave. Ed Mendoza, for example, testified that Escriba asked only for "vacation time" and not for "family leave." Still another witness, Foster Farms's labor-relations manager John Dias, stated that his internal investigation into Escriba's termination confirmed that Escriba knew "she was on vacation and she knew [it] was scheduled vacation."

Circumstantial evidence also suggests that Escriba knew that the Human Resources Department, not her supervisors, approved FMLA leave because Escriba had successfully requested FMLA leave on *fifteen* prior occasions. A reasonable inference from this evidence is that, if Escriba had desired to take FMLA leave, she would have arranged for such leave with Human Resources. Considering all the evidence, the jury reasonably found that Escriba expressed a desire *not* to take FMLA leave.

Foster Farms also introduced evidence explaining why Escriba might have declined to take FMLA leave at the time. Under Foster Farms's policies, FMLA leave runs concurrently against the balance of both an employee's accrued vacation time and the employee's FMLA-protected leave until the paid vacation time is exhausted. When an

employee's paid vacation time expires, that employee may remain on unpaid leave until a *total* of 12 weeks elapses. *See* 29 U.S.C. § 2612(a)(1) (limiting FMLA leave to 12 weeks per year). A different result occurs if an employee initially declines FMLA leave. By declining to take FMLA leave and subsequently requesting it at a later date, an employee can first take paid vacation, after which that employee would still have the full 12 weeks of FMLA leave remaining.

Under the facts of this case, if Escriba purposefully deferred asking for FMLA leave until after the expiration of her paid leave, she would have had two more weeks of protected leave than if she had initially requested family leave. A jury, hearing about Foster Farms's policies, could have easily concluded that Escriba sought to preserve future FMLA time. For the foregoing reasons, substantial evidence supports the jury's verdict that Escriba did not intend to take FMLA leave.

## B. Evidence of prior FMLA usage

Escriba also argues that the district court erred in admitting irrelevant and highly prejudicial evidence about her prior FMLA leave, evidence that she argues had "no bearing on whether she gave statutory notice, and which more likely than not tainted the verdict." According to Escriba, "[a]n employee need not understand (or follow) her employer's policies for requesting FMLA leave in order to provide adequate notice under the Act," and therefore she "was *not* required to contact Human Resources to give statutory notice." Foster Farms counters that Escriba's argument "once again obfuscat[es] the issue" because evidence of her prior FMLA leaves was not offered to show that Escriba's notice was inadequate; rather, her decision not to visit Human

Resources on the occasion in question "suggested that she did not want FMLA leave at all."

Evidence is relevant and therefore admissible when it tends to prove or disprove a fact "of consequence in determining the action." Fed. R. Evid. 401(b). But relevancy is not the only prerequisite for admissibility. Relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "We review a district court's admission of evidence for abuse of discretion." *United States v. Dorsey*, 677 F.3d 944, 951 (9th Cir. 2012).

In its July 13, 2011 order on Escriba's motion in limine, the district court permitted Foster Farms to introduce evidence regarding Escriba's prior FMLA leave for the following limited purposes:

> (1) Whether there was a policy and procedure in place at Foster Farms regarding family medical leaves of absence and related paperwork;

> (2) If there was a policy and procedure in place at Foster Farms, whether such policy and procedure was consistently applied in the same manner in each instance of leave; and

> (3) If there was a policy and procedure and that policy and procedure was consistently applied to Ms. Escriba and others, whether Ms. Escriba knew of the policy and

procedure, whether [Ms. Escriba] followed
that policy on prior leaves, and whether she
knew the policy and procedure applied to the
circumstances present in this case.

*Escriba v. Foster Poultry Farms, Inc.*, No. 1:09-CV-1878,
2011 WL 2746272, at *2 (E.D. Cal. July 13, 2011).

The district court agreed to "instruct the jury that Ms.
Escriba, like any eligible employee, has a lawful right to take
leaves under the [FMLA] for her own serious health
conditions and to care for family members with serious health
conditions." *Id.* Morever, the district court agreed to instruct
the jury "that these prior leaves are not and may not be
presented to suggest that Ms. Escriba took too many leaves or
for any other negative conclusion about Ms. Escriba's leave
history." *Id.*

Escriba's argument rests on the erroneous assertion that
simply mentioning an FMLA-qualifying reason for an
absence triggers the Act's protections. This in turn rests on
Escriba's erroneous contention, which is addressed in Part
II.A.3. above, that refusing to immediately exercise one's
FMLA rights is "legally impossible." But nothing in the
FMLA precludes an employee from deferring the exercise of
his or her FMLA rights and, as explained above, the
preservation of future FMLA leave is a compelling practical
reason why an employee might wish to do so. Because the
premise of Escriba's argument against admissibility is
unfounded, her entire argument fails. Foster Farms's theory
of the case was not, as Escriba maintains, "legally
impossible," and the district court properly admitted (and
limited the use of) evidence of her prior FMLA usage.

Moreover, even if we were to conclude that the district court erred in admitting evidence of Escriba's prior FMLA leave, the error was harmless. A jury "is presumed to follow the instructions given to it," *United States v. Heredia*, 483 F.3d 913, 923 (9th Cir. 2007) (en banc), and the presumption is a "strong" one. *Dorsey*, 677 F.3d at 955. The district court explicitly instructed the jury that "failure to follow . . . internal employer procedures will not permit an employer to disallow or delay an employee's taking FMLA leave if the employee gives timely verbal or other notice." Given this instruction, Escriba's argument that evidence of her prior FMLA leave improperly influenced the jury's decision is without merit. Escriba offers no tenable reason why the strong presumption that juries follow the court's instructions should not apply in the present case. Because the district court issued a limiting instruction, which the jury is presumed to have followed, any error in admitting the evidence was harmless.

In sum, the jury had ample evidence to render a verdict against Escriba due to her noncompliance with Foster Farms's "three day no-show, no-call rule." Escriba was obligated to comply with this nondiscriminatory company policy regardless of her reason for taking leave. We therefore find no error in the ultimate judgment for Foster Farms.

## C. Order denying costs

Turning now to the cross-appeal, Foster Farms contends that the district court erred in denying the company's cost bill in the amount of $13,958.16, an amount that the court clerk had reduced from the initial request for $21,703.31. The district court declined to tax costs because Escriba has limited financial resources, there is a significant financial disparity

between the parties, this case involves close issues of substantial public importance, and because taxing costs would have a chilling effect on future FMLA cases. Foster Farms contends that the district court abused its discretion in denying the claim for costs.

Rule 54(d)(1) of the Federal Rule of Civil Procedure provides that "costs—other than attorney[] fees—shall be allowed to the prevailing party." On its face, "the rule creates a presumption in favor of awarding costs to a prevailing party, but vests in the district court discretion to refuse to award costs." *Ass'n of Mexican-American Educ. v. State of Cal.*, 231 F.3d 572, 591 (9th Cir. 2000) (en banc). This discretion, however, is not without limits. *Id.* "A district court must 'specify reasons' for its refusal to award costs." *Id.* We thus must determine whether the district court's reasons for denying costs "are appropriate and whether, considering those reasons, the court abused its discretion in denying costs." *Id.* at 592.

Appropriate reasons for denying costs include: (1) the substantial public importance of the case, (2) the closeness and difficulty of the issues in the case, (3) the chilling effect on future similar actions, (4) the plaintiff's limited financial resources, and (5) the economic disparity between the parties. *Id.* at 592–93. This is not "an exhaustive list of 'good reasons' for declining to award costs," but rather a starting point for analysis *Id.* at 593.

In concluding that the case presented issues of substantial public importance, the district court relied on a letter from the Fair Labor Standards Division of the United States Department of Labor, the agency that is responsible for administering and enforcing the FMLA. An Associate

Solicitor for the Department of Labor explained that cases like Escriba's "establish the parameters of what constitutes sufficient employee notice," which is "particularly important to the public interest." The district court also relied on a California public official's statement that a case brought on behalf of a single plaintiff as opposed to a class can still be important because these issues "protect[] vital civil rights for women in the work place." These statements directly contradict Foster Farms's contention that the case is mundane because it includes only a single plaintiff. Indeed, the record includes statements from Foster Farms's own attorneys that reinforce the broad scope of this case, including a statement that "[t]hough brought by a lone employee, the case potentially had a much broader application to the workplace."

Nor did the district court err in concluding that the issues in this case are close and complicated. According to the district court, "[t]he issues presented in this case required close attention to detail, including hearing and understanding expert testimony on proper HR policies—testimony not typically needed in FMLA cases—and understanding FMLA regulations and their application to the facts." *Escriba v. Foster Poultry Farms, Inc.*, No. 1:09-CV-1878, 2012 WL 174847, at *5 (E.D. Cal. Jan. 20, 2012). The case addresses an important legal question that turns on the careful evaluation of witness testimony and circumstantial evidence. Given these factors, the district court appropriately concluded that Escriba's case was close.

The district court also concluded that Escriba's limited financial resources weighed against taxing her with Foster Farms's costs. Costs are properly denied when a plaintiff "would be rendered indigent should she be forced to pay" the amount assessed. *Stanley v. Univ. of S. Cal.*, 178 F.3d 1069,

1080 (9th Cir. 1999). Escriba earned an average of $11,622 per year while working for Foster Farms, meaning that the costs being sought by the company exceed her average annual earnings. Moreover, the record reflects that Escriba's efforts to secure steady employment post-termination have been unsuccessful.

The district court further concluded that taxing costs in the instant case would present a serious danger of chilling future FMLA actions. In arriving at this conclusion, the district court relied on declarations from the director of the California Department of Fair Employment and Housing and a letter from the United States Department of Labor, both of which recommended that taxing costs would chill future actions because low-wage earners would be reluctant to file suit.

Although Foster Farms maintains that the consideration of the chilling effect of a particular imposition of costs is appropriate only when addressing "overwhelming costs in important, close, but ultimately unsuccessful civil rights cases," *see Association of Mexican-American Educators*, 231 F.3d at 593, the company's quotation from that case is incomplete. The entire quote reads as follows: "In keeping with [our prior decision], we note that divesting district courts of discretion to limit or to refuse such overwhelming costs in important, close, but ultimately unsuccessful civil rights cases like this one might have the regrettable effect of discouraging potential plaintiffs." *Id.*

Foster Farms's quotation omits crucial language about a district court's discretion, which affords such a court an element of flexibility in evaluating the suitability of awarding costs in a particular case. Although the costs sought by

Foster Farms might be considered modest when compared to amounts sought in other, larger cases, even modest costs can discourage potential plaintiffs who, like Escriba, earn low wages.

Foster Farms also argues that the district court abused its discretion by considering the economic disparity between the parties. The court emphasized that Foster Farms "is a multi-state operation with more than 10,000 employees and a global product line, which made approximately 2 billion dollars in revenue in 2007 and 2009." *Escriba*, 2012 WL 174847, at \*4. Although Foster Farms disputes whether *Association of Mexican-American Educators* permits a district court to consider the parties' relative economic power—and directs us to contrary authorities from our sister circuits—the en banc opinion clearly states that the "reasons that the district court gave for refusing to award costs . . .were appropriate," and those reasons included the "great economic disparity" between the parties. 231 F.3d at 592–93. The district court therefore did not err in denying costs based in part on Escriba's "limited financial resources." *See Champion Produce, Inc. v. Ruby Robinson Co.*, 342 F.3d 1016, 1022 (9th Cir. 2003).

Finally, Foster Farms encourages the panel to approach the district court's decision not to tax costs with skepticism because Judge O'Neill, who entered the order denying costs, was not the judge who presided at trial. Judge Wanger presided over the trial and entered final judgment in favor of Foster Farms. The case was reassigned to Judge O'Neill only after Judge Wanger retired from the bench. Foster Farms points out that Judge Wanger included a sentence at the end of his final order in this case providing (without explanation) that "Defendant is entitled to recover [its] costs of suit." This

has prompted Foster Farms to argue that "Judge O'Neill had no more familiarity with the underlying facts than do the judges of *this* court," a fact that "very strongly suggests that this court should view Judge O'Neill's contrary order skeptically, and not afford it the benefit of any deference."

But Judge Wanger's statement that "Defendant is entitled to recover [its] costs of suit" is not a ruling on Escriba's motion to review the taxation of costs. Indeed, Escriba's motion was not pending before Judge Wanger at that time because the parties had not even briefed the issue of costs. Given these facts, Judge Wanger's unsupported statement is more readily understood as a blanket recitation of Rule 54's presumption in favor of costs rather than an actual determination on the merits. We therefore find no reason to apply a heightened standard of review to Judge O'Neill's order, nor do we believe that the district court abused its discretion in declining to award the costs of suit to Foster Poultry.

## III.  CONCLUSION

For all the reasons set forth above, we **AFFIRM** the judgment of the district court. Each party shall bear its own costs of this appeal.