**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DANNY SNAPP,
　　　　　　*Plaintiff-Appellant*,

　　　　　v.

UNITED TRANSPORTATION UNION,
　　　　　　*Defendant*,

　　　　　and

BURLINGTON NORTHERN SANTA FE
RAILWAY COMPANY,
　　　　　　*Defendant-Appellee.*

No. 15-35410

D.C. No.
3:10-cv-05577-
RBL

OPINION

Appeal from the United States District Court
for the Western District of Washington
Ronald B. Leighton, District Judge, Presiding

Argued and Submitted November 8, 2017
Portland, Oregon

Filed May 11, 2018

Before: Ferdinand F. Fernandez, William A. Fletcher, and Michael J. Melloy,\* Circuit Judges.

Opinion by Judge Melloy

**SUMMARY**\*\*

**Employment Discrimination**

The panel affirmed the district court's judgment, after a jury trial, in favor of Burlington Northern Santa Fe Railway Co., the defendant in an action alleging a failure to accommodate under the Americans with Disabilities Act.

The panel held that the ADA treats the failure to provide a reasonable accommodation for a disability as an act of discrimination if the employee is a "qualified individual," the employer receives adequate notice, and a reasonable accommodation is available that would not place an undue hardship on the operation of the employer's business. Notifying an employer of a need for an accommodation triggers a duty to engage in an "interactive process." If an employer receives notice and fails to engage in the interactive process, the employer will face liability if a reasonable accommodation would have been possible. If an employer fails to engage in good faith in the interactive process, the burden at the summary-judgment phase shifts to

---

\* The Honorable Michael J. Melloy, United States Circuit Judge for the U.S. Court of Appeals for the Eighth Circuit, sitting by designation.

\*\* This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

the employer to prove the unavailability of a reasonable accommodation.

In an earlier appeal, a prior panel reversed the district court's summary judgment in favor of BNSF and stated: "there is a genuine dispute over whether BNSF engaged in good faith in a required interactive process, and failure to do so would constitute discrimination under the ADA." The panel concluded that this statement was not law of the case, but rather a less-than-complete statement of law.

The panel held that at trial, unlike at the summary judgment phase, the burden of proof does not shift, and the plaintiff bears the burden of proving that the employer could have made a reasonable accommodation that would have enabled the plaintiff to perform the essential functions of the job. The panel rejected the argument that the plaintiff has only a burden of production, rather than a burden of proof. Accordingly, the district court's jury instructions were correct.

Affirming the district court's denial of the plaintiff's motion for judgment as a matter of law, and agreeing with the Tenth Circuit, the panel held that BNSF was not bound by admissions made in a deposition of a corporate designee for BNSF pursuant to Fed. R. Civ. P. 30(b)(6), such that the jury should not have been allowed to consider other evidence.

**COUNSEL**

Stephen L. Brischetto (argued), Law Offices of Stephen L. Brischetto, Portland, Oregon, for Plaintiffs-Appellants.

Britenae M. Pierce (argued), Shannon J. Lawless and James M. Shaker, Ryan Swanson & Cleveland, PLLC, Seattle, Washington, for Defendant-Appellee.

**OPINION**

MELLOY, Circuit Judge:

Plaintiff Danny Snapp brought this action against the United Transportation Union (the "Union") and his former employer, Burlington Northern Santa Fe Railway Company ("BNSF"), alleging a failure to accommodate under the Americans with Disabilities Act ("ADA"). A jury returned a defense verdict, and Snapp appeals. At trial, the parties disputed whether Snapp had requested an accommodation. In addition, the parties disagreed as to whether and how the jury instructions should address the "interactive process," *i.e.*, the statutorily required collaborative effort for identifying an employee's abilities and an employer's possibly reasonable accommodations. Snapp argues the district court improperly rejected a proposed instruction that would have imposed liability on BNSF merely for failing to engage in the interactive process, regardless of the availability of a reasonable accommodation. Snapp also argues the district court improperly rejected a proposed jury instruction that would have described his overall burden of proof as a mere burden of production rather than as an ultimate burden of persuasion. Finally, Snapp argues the district court erred by refusing to treat statements by BNSF's

Federal Rule of Civil Procedure 30(b)(6) corporate representative as binding admissions. We find no error and affirm the judgment of the district court.

## I. Background

Snapp worked for BNSF from 1971 through 1999. He rose through the ranks, becoming a Division Trainmaster in 1986. Due to tiredness and low energy, he went to a doctor in 1994. He was diagnosed with sleep apnea and had surgeries in 1996 and 1998 in unsuccessful attempts to correct his condition.

In 1999, BNSF received a report from Snapp's physician. Snapp's supervisor told Snapp he did not believe Snapp could work in a safe manner. In 1999, Snapp took a "fitness for duty" evaluation, was determined to be totally disabled, and went on short-term disability leave. He applied for long-term disability benefits through CIGNA, the third-party administrator for BNSF's disability plan. In February 2000, BNSF's medical director told Snapp that CIGNA had approved Snapp's claim for disability benefits and that, should CIGNA later find him ineligible, he should contact BNSF's medical director to plan a "return to work." Snapp began a period of long-term disability leave and received payments from CIGNA.

In 2005, CIGNA requested a sleep study to verify Snapp's continuing disability. When Snapp arrived at a clinic for the study, the clinic asked him to sign a release accepting personal financial responsibility for the test. He refused and did not complete the study. In November 2005, CIGNA terminated Snapp's disability benefits citing an absence of evidence of continuing disability.

At that time, Snapp did not request an accommodation or apply to return to work. Rather, he appealed CIGNA's denial of benefits, filed complaints with governmental entities, and copied BNSF on his appeal letter. CIGNA notified BNSF in November 2007 that it had denied Snapp's appeal and Snapp was no longer eligible for long-term disability.

Also in November 2007, Snapp wrote to BNSF demanding reinstatement of his disability payments, demanding reimbursement for overpayment of life-insurance premiums, and threatening to sue BNSF. He called to follow up on the letter. He did not ask to return to employment in either the letter or the call.

On January 2, 2008, BNSF representative Lori Emery sent Snapp a letter telling him that, in accordance with the BNSF Long-Term Disability Plan, he had sixty days to secure a position with BNSF or he would be dismissed. The letter stated, "BNSF is under no obligation to provide you with a salaried position if you are released to return to work by your physician." Emery invited Snapp to contact her directly and copied Dane Freshour, BNSF's Regional Director of Human Resources.

On January 6, 2008, Snapp wrote back a letter addressing primarily the denial of disability benefits and attaching several documents. Snapp's letter stated, "Your letter does nothing to address my letter dated November 10, 2007! . . . I was in hopes that BNSF Railway would assist me in my endeavor with CIGNA . . . . For several years I have attempted to get BNSF Railway to correct the ongoing malicious administration of the Disability contract(s) . . . ." Snapp also stated he would "more than welcome your offer to return to BNSF employment without discrimination of my situation . . . ." He attached to his letter several pages related

to the CIGNA policy regarding CIGNA's payment for rehabilitation and reasonable accommodation costs.  He also attached a doctor's note dated April 2007 in which the doctor stated, "I do not feel . . . it is safe for you to return to work." In the alternative, Snapp asked for "[a] continued and on going Long Term Disability leave of Absence until this is presented in a court of law regarding CIGNA discontinued benefits through malicious administration and breach of the BNSF . . . Welfare Plan."

Emery wrote to Snapp on January 10.  She confirmed receipt of his November 2007 and January 2008 letters and reported having resolved the life-insurance-premium overpayment issue, stating a refund check was on its way. Regarding disability benefits, she reiterated that CIGNA was solely responsible for plan administration and he should deal with CIGNA directly.  In doing so, she referenced a 2006 communication from BNSF to Snapp's attorney conveying the same information.  Emery reported that BNSF was standing by the sixty-day window to secure employment, cited a website for accessing current openings, and identified Freshour as the human resources representative for Snapp's geographic region.

Snapp neither visited the website nor contacted Freshour.  Before the end of the sixty-day period, however, Snapp contacted the Union to ask about his seniority for a yardmaster position.  The Union told him he lacked the requisite seniority.  Notwithstanding this information, he sent a letter dated February 28, 2008, to a BNSF facility in Vancouver, Washington, seeking to displace a senior yardmaster for a position and asking for an immediate ninety-day medical leave beginning March 2 "to finalize medical testing with the slight possibility of surgery for correction of my long and existing condition."  Snapp

attached to his February 28 letter a note from a Veterans
Affairs neurologist who stated:

> Thank you for your recent correspondence
> and request for clarification of my
> recommendations from January 14, 2008. As
> I stated previously, *light-duty work can be*
> *considered after treatment is further*
> *optimized* (oral appliance therapy) but the
> following restrictions would need to apply:
> daytime work only (no shift work);
> restriction to 8 hours of duty at the maximum
> (no mandated overtime)[;] and no working
> with heavy equipment. An office job that
> didn't involve any activity during which time
> if you [fell] asleep you could cause injury to
> yourself or other[s] is what I would
> recommend.

(Emphasis added).

BNSF checked with the Union regarding Snapp's
seniority and discovered he lacked the requisite seniority.
Because the sixty-day window had expired, BNSF
terminated his employment. Snapp challenged the Union's
determination, and the Union explained he had not been a
member since 1982. Snapp continued to communicate with
BNSF through at least Spring 2009, seeking to exercise
seniority rights for a brakeman position. BNSF directed him
to the company website to apply for open positions. Snapp
then pursued a claim against BNSF through the Public Law
Board concerning his attempted exercise of seniority rights.
The Board ruled in favor of BNSF. Snapp did not apply for
any positions with BNSF other than the Vancouver

yardmaster job in 2008 and the brakemaster job in 2009 (his post-termination attempt).

Snapp sued BNSF in August 2010 alleging a failure to provide a reasonable accommodation. BNSF moved for and was granted summary judgment. The Ninth Circuit reversed, finding a genuine dispute of material fact as to whether Snapp requested an accommodation so as to trigger BNSF's duty to engage in the interactive process. *Snapp v. United Transp. Union*, 547 F. App'x 824, 826 (9th Cir. 2013) (unpublished memorandum disposition). On remand, BNSF and Snapp each moved for summary judgment. The district court denied the motions. As relevant to the present appeal, Snapp argued that, in a Federal Rule of Civil Procedure Rule 30(b)(6) corporate-designee deposition, Freshour admitted Snapp had requested an accommodation and also admitted BNSF failed to engage in the interactive process in response to the request.

At trial, Snapp repeatedly addressed the issue of BNSF's duty to engage in the interactive process. Snapp requested jury instructions that the district court rejected. In particular, Snapp sought an instruction that would have relieved him entirely of showing the availability of a reasonable accommodation. He sought to impose liability on BNSF simply for failing to engage in the interactive process *unless* BNSF could prove an affirmative defense, which he argued BNSF had waived.[1] In doing so, Snapp characterized the

---

[1] With his proposed instruction, which referenced "an affirmative defense," Snapp submitted a note to the court, stating:

> Defendant has raised no affirmative defense that no reasonable accommodation was possible, that reasonable accommodation would pose an undue hardship or that plaintiff's employment posed a direct

unavailability of a reasonable accommodation as an affirmative defense. Further, and regardless of BNSF's participation in an interactive process, Snapp sought an instruction that would have described Snapp's burden of proof as to the availability of a reasonable accommodation in terms equivalent to a slight burden of production. The instructions as actually given to the jury placed the burden of proof on Snapp as to all issues other than the statutory defense of "undue hardship," which the instructions placed on BNSF. The district court did not give the jury an instruction regarding the duty to engage in the interactive process. The instructions the district court gave were based on the Ninth Circuit Model Instructions.

Snapp moved at the end of trial for judgment as a matter of law, reasserting the arguments from his unsuccessful summary judgment motion. The district court denied the motion, and the jury returned a verdict for BNSF.

## II. Analysis

Snapp alleges the district court erred in formulating the jury instructions and in denying the motion for judgment as a matter of law. Snapp also seeks review of the denial of his motion for summary judgment. Post-trial, however, a denial of summary judgment generally is not separately reviewable. *See Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1243 (9th Cir. 2014). In any event, we address issues raised in that motion to the extent Snapp reasserted his arguments in his later motion for judgment as a matter of law. *See id.*

---

threat of harm. Plaintiff objects to trying any of these untimely affirmative defenses at this late date.

The parties agree de novo review applies to the denial of the motion for judgment as a matter of law. The parties disagree as to the standard of review we are to apply to the alleged instructional error. "A district court's formulation of the jury instructions is reviewed for 'abuse of discretion.' If, however, 'the instructions are challenged as a misstatement of the law, they are then reviewed de novo.'" *Duran v. City of Maywood*, 221 F.3d 1127, 1130 (9th Cir. 2000) (per curiam) (quoting *Gilbrook v. City of Westminster*, 177 F.3d 839, 860 (9th Cir. 1999) (internal citation omitted)). In this instance, we conclude de novo review applies because an improper allocation of the burden of proof or an improper articulation of the elements of a cause of action necessarily would be errors at law.

## A. ADA Interactive Process, Generally

The ADA treats the failure to provide a reasonable accommodation as an act of discrimination if the employee is a "qualified individual," the employer receives adequate notice, and a reasonable accommodation is available that would not place an undue hardship on the operation of the employer's business. 42 U.S.C. § 12112(b)(5)(A) ("[T]he term 'discriminate against a qualified individual on the basis of disability' includes—not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity[.]"). The statute itself places on the employer the burden to demonstrate an undue hardship. *Id.*

The Ninth Circuit has held that notifying an employer of a need for an accommodation triggers a duty to engage in an "interactive process" through which the employer and

employee can come to understand the employee's abilities and limitations, the employer's needs for various positions, and a possible middle ground for accommodating the employee. *See Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1111–16 (9th Cir. 2000) (en banc), *vacated on other grounds sub nom.*, *US Airways, Inc. v. Barnett*, 535 U.S. 391, 406 (2002). In *Barnett*, the Ninth Circuit held that if an employer receives notice and fails to engage in the interactive process in good faith, the employer will face liability "*if a reasonable accommodation would have been possible*." *Barnett*, 228 F.3d at 1116 (emphasis added). In other words, there exists no stand-alone claim for failing to engage in the interactive process. Rather, discrimination results from denying an available and reasonable accommodation.

Recognizing the importance of the interactive process, the Ninth Circuit also held that if an employer fails to engage in good faith in the interactive process, the burden at the summary-judgment phase shifts to the employer to prove the unavailability of a reasonable accommodation. *See Morton v. United Parcel Serv., Inc.*, 272 F.3d 1249, 1256 (9th Cir. 2001), *overruled on other grounds*, *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 995 (9th Cir. 2007) (en banc); *Barnett*, 228 F.3d at 1116 ("We hold that employers, who fail to engage in the interactive process in good faith, face liability for the remedies imposed by the statute if a reasonable accommodation would have been possible. We further hold that an employer cannot prevail at the summary judgment stage if there is a genuine dispute as to whether the employer engaged in good faith in the interactive process."). The rationale for shifting this burden arises from EEOC regulations and the ADA's legislative history that characterize the interactive process as at the heart of the accommodation process. *See Barnett*, 228 F.3d at 1110–16.

*Barnett* and *Morton* were summary-judgment cases. No Ninth Circuit case has actually held that the shifted burden as to the availability of a reasonable accommodation carries over into trial and must be expressed in jury instructions. In *Morton*, however, the court used expansive language that Snapp relies upon to argue that this burden shifting should apply at trial. *See*, 272 F.3d at 1256 ("The question whether this failure should be excused because there would in any event have been no reasonable accommodation available is one as to which the employer, not the employee, should bear the burden of persuasion *throughout the litigation*." (emphasis added)). The main question in the present appeal turns on whether the burden shifting announced in *Barnett* and *Morton* applies also at trial or should be cabined to the summary-judgment context. Snapp also presents an argument concerning the "law of the case" based on the memorandum disposition in the first appeal, a more general challenge to the jury instructions, and an argument concerning testimony from a corporate-designee deponent. We address these arguments below.

## B.  Jury Instructions—Interactive Process

### i.  Law of the Case

Snapp requested an instruction that would have provided, "If plaintiff proves defendant failed to initiate the interactive process or to participate in good faith in the interactive process, your verdict should be for plaintiff [unless defendant proves an affirmative defense.]" Plaintiff's Proposed Inst. No. 27. Snapp then characterized "reasonable accommodation," "undue hardship," and "direct threat of harm" as affirmative defenses and argued BNSF waived all of these defenses. Through this request, including his labeling of "reasonable accommodation" as an affirmative defense that BNSF allegedly had waived, Snapp

sought in the alternative (1) direct liability on BNSF for failing to engage in the interactive process, and (2) an instruction that would have applied burden shifting as a remedy for BNSF's alleged failure to engage (*i.e.*, would have imposed on BNSF a burden to prove the unavailability of a reasonable accommodation).

Snapp argues that his exact proposed instruction was proper because, in the memorandum disposition from the first appeal in this case, the Ninth Circuit stated, "Consequently, there is a genuine dispute over whether BNSF engaged in good faith in a required interactive process, and failure to do so would constitute discrimination under the ADA." *Snapp*, 547 F. App'x at 826. According to Snapp, this statement constitutes "the law of the case" such that the district court was bound to use his proposed instruction.

"[U]nder [the] 'law of the case' doctrine, one panel of an appellate court will not as a general rule reconsider questions which another panel has decided on a prior appeal in the same case." *Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir. 1993) (quoting *Merritt v. Mackey*, 932 F.2d 1317, 1320 (9th Cir. 1991)). But, "[f]or the doctrine to apply, the issue in question must have been 'decided either expressly or by necessary implication in [the] previous disposition.'" *Id.* (quoting *Milgard Tempering, Inc. v. Selas Corp. of Am.*, 902 F.2d 703, 715 (9th Cir. 1990)). Here, we find no indication that the prior panel intended the quoted statement to serve as a full statement of the law or that the quoted statement was necessary for resolution of the appeal. That panel was reviewing a grant of summary judgment and did not purport to articulate instructions for trial. Moreover, as explained below, a denial of summary judgment is appropriate where there has been a failure to engage in the

interactive process. *See Morton*, 272 F.3d at 1256; *Barnett*, 228 F.3d at 1116. The prior panel's statement, therefore, is not the law of the case. Rather it is merely a *less-than-complete* statement of law commensurate in scope with the matter actually before that court, namely, a motion for summary judgment that did not actually present the opportunity to expand upon *Morton* and *Barnett* in the context of a trial. We reject Snapp's attempt to invoke the law of the case doctrine based upon this short, conclusory statement from the memorandum disposition.

A party's failure to submit a proper articulation of the law in a proposed jury instruction, however, does not relieve the trial court of the duty to properly set forth the law in the actual instructions. *See Merrick v. Paul Revere Life Ins.*, 500 F.3d 1007, 1017 (9th Cir. 2007). And, the use of model instructions does not preclude reversal. *See Hunter v. County of Sacramento*, 652 F.3d 1225, 1232 (9th Cir. 2011) ("We have also recognized that a district court's 'use of a model jury instruction does not preclude a finding of error.'" (quoting *Dang v. Cross*, 422 F.3d 800, 805 (9th Cir. 2005))). Moreover, other contested instructions in this case involved disputes as to the proper articulation of the burden of proof. As such, notwithstanding our rejection of Snapp's "law of the case" challenge, it remains necessary to address the instructions.

## ii. *Barnett* and *Morton* Holdings and Dicta

In *Barnett*, on appeal from a grant of summary judgment, the Ninth Circuit recognized the employer's duty to engage in the interactive process. The court first reviewed the ADA, legislative history, and EEOC guidelines for conducting the interactive process. Recognizing the inherent informational imbalance between employers and employees and the

employer's superior knowledge regarding possible alternative positions, the court concluded:

> To put the entire burden for finding a reasonable accommodation on the disabled employee or, effectively, to exempt the employer from the process of identifying reasonable accommodations, conflicts with the goals of the ADA. The interactive process is at the heart of the ADA's process and essential to accomplishing its goals. It is the primary vehicle for identifying and achieving effective adjustments which allow disabled employees to continue working without placing an "undue burden" on employers. Employees do not have at their disposal the extensive information concerning possible alternative positions or possible accommodations which employers have. Putting the entire burden on the employee to identify a reasonable accommodation risks shutting out many workers simply because they do not have the superior knowledge of the workplace that the employer has.

*Barnett*, 228 F.3d at 1113. The court then "turn[ed] to the consequences for employers who fail to engage in the interactive process in good faith." *Id.* at 1115. The court noted that the employee typically will have proposed some accommodation, but that "[t]he range of possible reasonable accommodations, for purposes of establishing liability for failure to accommodate, can extend beyond those proposed." *Id.* Based upon this multiplicity of possible accommodations and the need to deter uncooperative

employers, the court concluded "an employer cannot prevail at the summary judgment stage if there is a genuine dispute as to whether the employer engaged in good faith in the interactive process." *Id.* at 1116. Nevertheless, the court unequivocally stated that liability does not arise in the absence of an available reasonable accommodation. *Id.* ("We hold that employers, who fail to engage in the interactive process in good faith, face liability for the remedies imposed by the statute if a reasonable accommodation would have been possible."); *see also id.* at 1115 ("Most circuits have held that liability ensues for failure to engage in the interactive process when a reasonable accommodation would otherwise have been possible.").

The court made no comments purporting to address burdens of proof at trial. Nor did the court suggest it was contemplating the complexities that would arise from such an instructional issue at trial. In fact, these complexities militate strongly against taking *Barnett* out of context and extending its holding to trial. As a practical matter, the jury would need instructions asking if the employer participated in the interactive process in good faith. Then, the jury would need alternative instructions telling them how to allocate the burden of proof if they found an employer had failed to engage in good faith, and as a contingency, how to allocate the burden if the employer did engage in the interactive process. All the while, the court would need to ensure the jury did not impose liability on the employer simply for failing to engage—the risk of prejudicial juror confusion would be high. District judges dealing with motions for summary judgment, with the benefit of briefing, are well-equipped to cut through such thickets. It is less clear such complexity is appropriate for jury instructions. In fact, courts often reject attempts to charge jurors with

complicated burden-shifting frameworks, asking jurors, instead, to weigh in on the ultimate question of discrimination. *Cf. Sanghvi v. City of Claremont*, 328 F.3d 532, 539 (9th Cir. 2003) (critiquing in another context "the use of legalistic language and the complexities of burden shifting" and concluding "the only question that should go to the jury is the ultimate question of discrimination").

Moreover, if the burden were shifted at trial, and if the employer failed to meet the burden, the net effect might be liability without identification of an accommodation. This outcome alone would seem to contradict *Barnett*. And it would place the jury in the difficult situation of assessing damages for a failure-to-accommodate claim with nothing but speculation to guide the analysis of damages. *See Yonemoto v. McDonald*, 114 F. Supp. 3d 1067, 1115–18 (D. Haw. 2015) (refusing to extend burden shifting to trial and identifying damages issue), *aff'd sub nom.*, *Yonemoto v. Shulkin*, Nos. 15-16769 & 16-16076, 2018 WL 896723 (9th Cir. Feb. 15, 2018) (unpublished memorandum disposition). The summary judgment context for *Barnett*, the absence of discussion of trial issues, and the obvious complexities that would arise all strongly suggest that the burden shifting should be limited to summary judgment.

Then, in *Morton*, applying and interpreting *Barnett* to review a summary judgment, the court stated:

> It is the employer's responsibility, through participation in the interactive process, to assist in identifying possible accommodations. Here, UPS does not argue that it *did* engage in good faith in the interactive process. The question whether this failure should be excused because there would in any event have been no reasonable

> accommodation available is one as to which the employer, not the employee, should bear the burden of persuasion *throughout the litigation*.

272 F.3d at 1256 (first emphasis in original, citation and footnote omitted). This language, seemingly purporting to reach beyond summary judgment, was more expansive than what was said in *Barnett* and was unnecessary for resolution of the appeal in *Morton*. Regardless, in an accompanying footnote, the court continued its discussion:

> *Barnett* can be read as holding that an employer who has not engaged in the interactive process is not entitled to summary judgment no matter what the evidence on summary judgment shows concerning the actual availability of a reasonable accommodation. It is odd, however, to delay until trial an issue that is fact dependent, if proof of the relevant facts—here, the facts pertinent to proving that a relevant accommodation was available—*will* be necessary at trial. We therefore understand *Barnett* as holding, instead, that the task of proving the negative—that *no* reasonable accommodation was available—rests with an offending employer throughout the litigation, and that, given the difficulty of proving such a negative, it is not likely that an employer will be able to establish on summary judgment the absence of a disputed fact as to this question.

*Id.* at 1256 n.7. In making these comments, however, the court in *Morton* did not acknowledge or address the complexities that might arise at trial.

Most recently, in *Yonemoto*, a district court in our circuit analyzed this issue in the context of a bench trial and concluded the shifted burden does not carry over from summary judgment to trial. *See Yonemoto*, 114 F. Supp. 3d at 1115–18. In doing so, the court in *Yonemoto* identified the expansive language from *Morton* as dicta and found that a consensus of "virtually every other circuit" did not employ such burden shifting. *Id.* at 1117. Moreover, *Yonemoto* concluded the concerns that justified the summary judgment rule in *Barnett* were lessened at trial. We agree.

*Yonemoto* characterized the *Morton* court's comments about burdens at trial as dicta not only due to the limited summary-judgment context in which they were made, but also because they were "made casually . . . without any discussion, let alone analysis, of the possible alternatives at trial." *Yonemoto*, 114 F. Supp. 3d at 1117. Given the complexities and risk of prejudice, "it appear[ed] very unlikely that the *Morton* panel intended, without a much fuller analysis, to establish a burden-shifting rule at odds with virtually every other circuit." *Id.* (applying the Ninth Circuit's analysis for identifying dicta as set forth in *United States v. Johnson*, 256 F.3d 895, 915–16 (9th Cir. 2001) (en banc) (Kozinski, J. concurring)).

In this regard, *Yonemoto* correctly noted that several circuits strongly support the view that a failure to engage does not require a shifted burden at trial. In fact, many circuits do not relieve the plaintiff of the burden even at summary judgment. *See, e.g.*, *Stern v. St. Anthony's Health Ctr.*, 788 F.3d 276, 293 (7th Cir. 2015) ("But regardless of the state of the record, an employer's failure 'to engage in

the required [interactive] process . . . need not be considered if the employee fails to present evidence sufficient to reach the jury on the question of whether she was able to perform the essential functions of her job with an accommodation.'" (alterations in original) (quoting *Basden v. Prof'l Transp., Inc.*, 714 F.3d 1034, 1039 (7th Cir. 2013))); *EEOC v. Ford Motor Co.*, 782 F.3d 753, 766 (6th Cir. 2015) (noting that if an employee fails to create a jury question as to a reasonable accommodation, the employer will not be liable "[e]ven if [the employer] did not put sufficient effort into the 'interactive process' of finding an accommodation"); *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 581 (4th Cir. 2015) ("However, an employer will not be liable for failure to engage in the interactive process if the employee ultimately fails to demonstrate the existence of a reasonable accommodation that would allow her to perform the essential functions of the position."); *Jones v. Nationwide Life Ins.*, 696 F.3d 78, 91 (1st Cir. 2012) (addressing an employer's alleged failure to engage in the interactive process and concluding: "It was [the employee's] burden 'to proffer accommodations that were reasonable under the circumstances[.]'" (quoting *Jones v. Walgreen Co.*, 679 F.3d 9, 19 n.6 (1st Cir. 2012))); *Hennagir v. Utah Dep't of Corr.*, 587 F.3d 1255, 1265 (10th Cir. 2009) ("Even if [an employer] fail[s] to fulfill its interactive obligations to help secure a [reasonable accommodation], [the employee] will not be entitled to recovery unless [s]he can also show that a reasonable accommodation was possible . . . ." (alterations in original) (quoting *Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1174 (10th Cir. 1999) (en banc))); *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 101 (2d Cir. 2009) ("The employer's failure to engage in such an interactive process, however, does not relieve a plaintiff of her burden of demonstrating, following discovery, that some accommodation of her disability was possible."). Further,

Snapp cites no cases in which a court has held such a burden shifting should occur at trial.

We believe the general consensus identified in *Yonemoto* is consistent with *Barnett* and with the text of the ADA itself. *Barnett* recognized that, as a practical matter, an employer's failure to engage in the interactive process limits the employee's access to information about what types of accommodations might have been possible.   This informational imbalance, in part, drove the court in *Barnett* to fashion the burden-shifting "consequence" for employers who fail to engage.   *Id.* at 1115.   This remedial burden shifting, however, is a departure from the generally understood apportionment of burdens of proof to plaintiffs. It also is a departure from the ADA itself which does not place the burden of disproving a reasonable accommodation on the employer, but rather, expressly places the burden on the employer to prove only the affirmative defense of "undue hardship."  42  U.S.C.  § 12112(b)(5)(A).    Moreover, employees may possess informational advantages in certain respects. *Barnett*, 228 F.3d at 1113 ("While employers have superior knowledge regarding the range of possible positions and can more easily perform analyses regarding the 'essential functions' of each, employees generally know more about their own capabilities and limitations.").  As such, even without judicially created consequences, the negative effects of a failure to engage are not entirely one-sided.

Snapp's argument in the present case, in practical terms, asserts that *Barnett*'s burden shifting at summary judgment is an *insufficient* consequence for an employer's failure to engage.   Snapp's argument is not unappealing.   Still, the informational imbalances that prevail pre-lawsuit (when the interactive process should be taking place) are likely to be

greatly diminished after full discovery and after the opportunity to present evidence for resolution of factual questions. *See Yonemoto*, 114 F. Supp. 3d at 1116 ("Further, the plaintiff is in the best position to know his limitations, and by trial the plaintiff has had the benefit of full discovery such that he should be able to identify a specific reasonable accommodation he was denied."). We therefore conclude it is neither appropriate nor necessary to extend the *Barnett* and *Morton* burden-shifting framework to trial. The "consequence" of the denial of summary judgment is not a meaningless gesture, and when weighed against the confusion and complexity likely to arise at trial, burden shifting is best confined to summary judgment.[2]

---

[2] We also note that Snapp only *indirectly* requested a burden-shifting instruction based on *Barnett*; he actually requested an imposition of liability as the direct consequence for BNSF's alleged failure to engage and argued "reasonable accommodation" was an affirmative defense that BNSF had waived. The statute itself is clear, however, that the employer's affirmative defense of "undue hardship" is a concept separate and distinct from the question of whether an otherwise reasonable accommodation exists. *See* 42 U.S.C. § 12112(b)(5)(A) (requiring reasonable accommodation "unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity"). As such, Snapp did not propose instructions that would have addressed the complexities identified in *Yonemoto*. Even on appeal, Snapp fails to address completely how a jury actually should be instructed if the jury also must decide whether an employer failed to engage. In the alternative, Snapp appears to argue that the district court, at a minimum, should have used an instruction proffered by BNSF, or some unidentified instruction, that would have notified the jury of the employer's duty to engage in the interactive process. The instruction BNSF proffered as to this point stated:

> When the employee requests a reasonable accommodation, the employer has an obligation to

C.  Burden of Production or Burden of Persuasion

A separate and more straightforward instructional issue on appeal relates to the district court's general characterization of the burden of proof.  Snapp's argument as to this issue stands alone, apart from any proposed burden shifting due to BNSF's alleged failure to engage in the interactive process.  With this argument, Snapp asserts that the instructions given by the district court simply misstated as a burden of proof what he believes should have been characterized as a mere burden of production.

The actual instructions submitted to the jury stated: "[T]he plaintiff has the burden of proving the following elements by a preponderance of the evidence," Inst. No. 10; "To establish the defendant's duty to provide a reasonable accommodation, the plaintiff must prove, by a preponderance of the evidence . . . the employer could have made a reasonable accommodation that would have enabled the employee to perform the essential functions of the job," Inst. No. 13; and, "The Defendant asserts the affirmative defense of undue hardship . . . . The defendant has the

---

engage in an interactive process with the employee to identify and implement appropriate reasonable accommodations.  An employer is not required to engage in a futile interactive process.  If no reasonable accommodation exists that would allow an employee to do his job, an employer cannot be liable for failure to engage in the interactive process.

Def. Prop. Instr. No. 27.  At trial, however, Snapp specifically argued *against* the use of this instruction.  And, in any event, Snapp does not articulate how a failure to use BNSF's instruction or some unidentified "interactive process" instruction could have caused harm in the absence of a misallocated burden.

burden of proving an affirmative defense by a preponderance of the evidence." Inst. No. 14.

Snapp had requested an instruction that stated:

> With respect to a reasonable accommodation, plaintiff has the burden of identifying an accommodation that seems reasonable on its face. A plaintiff meets this burden by identifying a plausible accommodation or a method of accommodation that is reasonable in a typical case. Once a plaintiff makes this showing, defendant bears the burden of proving specific circumstances about this particular case that demonstrates an undue hardship.

Plaintiff's Proposed Instr. No. 23. And in his argument to the district court, Snapp repeatedly characterized the underlying issue of a reasonable accommodation (or the lack thereof) as an affirmative defense.

In general, in the summary-judgment context, a burden-shifting framework applies to the analysis of ADA reasonable-accommodation claims just as it applies to myriad other civil-rights claims. *See US Airways*, 535 U.S. at 401–02. In *US Airways*, the Supreme Court identified a framework adopted by "[m]any of the lower courts" in which the "plaintiff/employee . . . need only show that an 'accommodation' seems reasonable on its face . . . [and then] the defendant/ employer . . . must show special . . . circumstances that demonstrate undue hardship." *Id.* This burden of merely identifying a possible accommodation is a simple burden of production. Importantly, the Court did not purport to speak as to the parties' ultimate burdens at trial. Rather, the Court specifically identified this framework for

use "to defeat a defendant/employer's motion for summary judgment." *Id.* at 401.

The Ninth Circuit has distinguished expressly the summary-judgment burden from the plaintiff's ultimate burden of proof at trial:

> [The plaintiff/employee] has the burden of showing the existence of a reasonable accommodation that would have enabled him to perform the essential functions of an available job.  To avoid summary judgment, however, [the plaintiff/employee] "need only show that an 'accommodation' *seems reasonable on its face*, i.e., ordinarily or in the run of cases."

*Dark v. Curry County*, 451 F.3d 1078, 1088 (9th Cir. 2006) (quoting *US Airways*, 535 U.S. at 401–02).  This distinction is consistent with the generally limited use of the familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  Because burden-shifting frameworks like those articulated in *US Airways* and *McDonnell Douglas* are merely analytical tools for focusing arguments, they typically fall away at the end of the analysis and leave the ultimate burden of proof (the burden of persuasion) on the plaintiff.  *See, e.g.*, *Costa v. Desert Palace, Inc.*, 299 F.3d 838, 855–56 (9th Cir. 2002) ("Regardless of the method chosen to arrive at trial, it is not normally appropriate to introduce the *McDonnell Douglas* burden-shifting framework to the jury.  At that stage, the framework 'unnecessarily evade[s] the ultimate question of discrimination *vel non*.'" (citations and footnote omitted)), *aff'd*, 539 U.S. 90 (2003).

Snapp relies upon *US Airways* to support his argument that the burden-of-production/burden-of-persuasion bifurcation carries over into all ADA trials. *US Airways*, however, does not support this contention for two reasons. First, the Court in *US Airways* was addressing a summary-judgment ruling, not a trial issue. 535 U.S. at 395. And second, the Court was not addressing a general question regarding the allocation of the burden of proof. Rather, in *US Airways*, the Supreme Court addressed how a court should consider the existence of an employer's otherwise non-discriminatory seniority-preference system when assessing a reasonable-accommodation claim. *Id.* at 395–96. Far from concluding a plaintiff carries only some minimal burden at trial, the Court concluded, instead, that a plaintiff at summary judgment must show "special circumstances" to justify an accommodation that would violate a seniority-preference system. *Id.* at 405–06 ("[W]e do mean to say that the plaintiff must bear the burden of showing special circumstances that make an exception from the seniority system reasonable in the particular case."). The Court, therefore, in no manner suggested it was lessening a burden or shifting more general burden of proof at trial *away from* an ADA reasonable-accommodation plaintiff.

We conclude, based upon *Dark*, that the district court properly described Snapp's burden as a burden of proof and properly refused Snapp's requested instruction.

### D.  Motion for Judgment as a Matter of Law

Finally, as a separate matter, Snapp argues that the district court erroneously denied his motion for judgment as a matter of law.  Specifically, Snapp argues that a corporate designee for BNSF made binding admissions that should have resulted in a determination, as a matter of law, that Snapp requested an accommodation and BNSF failed to

engage in the interactive process. We find no error in the denial of the motion for judgment as a matter of law.

During discovery, BNSF designated Human Resources Director Dane Freshour as its Fed. R. Civ. P. 30(b)(6) corporate representative. During Freshour's deposition, counsel for Snapp read isolated sentences from Snapp's letters to BNSF and elicited responses from Freshour. Snapp correctly notes that, in these responses, Freshour appeared to indicate Snapp had requested a reasonable accommodation and BNSF had failed to engage in the interactive process. Snapp argues these statements conclusively bind BNSF.

Apart from Freshour's answers to these questions in the depositions, however, the record contains a full history of communications between the parties showing that Snapp communicated repeatedly with BNSF, sought reinstatement of his long-term disability benefits, and accused BNSF, CIGNA, and his doctors of conspiring against him to deny him benefits. Moreover, two of Snapp's letters included doctor's notes that did not release him to work. Rather, the doctor's notes stated (1) it would not be safe for Snapp to return to work, and (2) he might be able to return to work in the future if treatment is "further optimized." The sentences Snapp's attorney asked Freshour about in the deposition were taken from these same letters—letters that were long and dense and primarily addressed Snapp's grievances about his terminated disability-insurance payments. At trial, the BNSF employee who had been communicating with Snapp through these letters, Emery, testified that she believed Snapp's letters were an attempt to reinstate his disability-insurance benefits. She also testified that she understood a reference by Snapp to "reasonable accommodation" to be a reference to CIGNA policy provisions that he had attached to his letter and that concerned rehabilitation.

Finally, BNSF's reply letters directed Snapp to review open positions and contact human resources, neither of which he did.

At trial, Freshour was questioned about his deposition responses. Snapp, therefore, was not limited in his ability to use the corporate designee's deposition as evidence. And his letters were admitted into evidence for the jury to consider. Taken in the light most favorable to the verdict, the record amply supports the view that Snapp neither requested an accommodation nor took advantage of resources that could have opened the door for the interactive process or a possible accommodation.

The only issue meriting discussion as to the motion for judgment as a matter of law, then, is whether BNSF was bound by Freshour's deposition responses such that the jury should not have been allowed to consider other evidence. "[A] corporation *generally* cannot present a theory of the facts that differs from that articulated by the designated Rule 30(b)(6) representative." 7 James Wm. Moore et al., *Moore's Federal Practice* § 30.25[3] (3d ed. 2016) (emphasis added). As such, "courts have ruled that because a Rule 30(b)(6) designee testifies on behalf of the entity, the entity is not allowed to defeat a motion for summary judgment based on an affidavit that conflicts with its Rule 30(b)(6) deposition or contains information that the Rule 30(b)(6) deponent professed not to know." *Id.*

This general proposition should not be overstated, however, because it applies only where the purportedly conflicting evidence truly, and without good reason or explanation, is in conflict, *i.e.*, where it cannot be deemed as clarifying or simply providing full context for the Rule 30(b)(6) deposition. *See, e.g.*, *MKB Constructors v. Am. Zurich Ins.*, 49 F. Supp. 3d 814, 829 n.11 (W.D. Wash. 2014)

("[A] party cannot rebut the testimony of its Rule 30(b)(6) witness when, as here, the opposing party has relied on the Rule 30(b)(6) testimony, and there is no adequate explanation for the rebuttal."); *Hyde v. Stanley Tools*, 107 F. Supp. 2d 992, 993 (E.D. La. 2000) (striking an affidavit that "directly contradict[ed]" the party's Rule 30(b)(6) deposition when the party did not provide a "reasonable explanation" for the inconsistency), *aff'd*, 31 F. App'x 151 (5th Cir. 2001) (per curiam). Moreover, it is important to distinguish between the use of a Rule 30(b)(6) designee's comments as to ultimate legal conclusions as contrasted with statements to establish background facts:

> the testimony of a Rule 30(b)(6) deponent does not absolutely bind the corporation in the sense of a judicial admission, but rather is evidence that, like any other deposition testimony, can be contradicted and used for impeachment purposes. The Rule 30(b)(6) testimony also is not binding against the organization in the sense that the testimony can be corrected, explained and supplemented, and the entity is not "irrevocably" bound to what the fairly prepared and candid designated deponent happens to remember during the testimony.

7 James Wm. Moore, et al., *Moore's Federal Practice* § 30.25[3] (3d ed. 2016). "Finally, a Rule 30(b)(6) deponent's own interpretation of the facts or legal conclusions do not bind the entity." *Id.*

The Tenth Circuit recently discussed limitations and challenges to Rule 30(b)(6) testimony, stating, "the 'majority of courts to reach the issue . . . treat the testimony

of a Rule 30(b)(6) representative as merely an evidentiary admission, and do not give the testimony conclusive effect.'" *Vehicle Mkt. Research, Inc. v. Mitchell Int'l, Inc.*, 839 F.3d 1251, 1260 (10th Cir. 2016) (citation omitted); *see also Keepers, Inc. v. City of Milford*, 807 F.3d 24, 34 (2d Cir. 2015) ("[The plaintiff] rightly notes that an organization's deposition testimony is binding in the sense that whatever its deponent says can be used against the organization. But Rule 30(b)(6) testimony is not binding in the sense that it precludes the deponent from correcting, explaining, or supplementing its statements." (footnote and quotation marks omitted)); *A.I. Credit Corp. v. Legion Ins. Co.*, 265 F.3d 630, 637 (7th Cir. 2001) ("[T]estimony given at a Rule 30(b)(6) deposition is evidence which, like any other deposition testimony, can be contradicted and used for impeachment purposes." (quoting *Indus. Hard Chrome, Ltd. v. Hetran, Inc.*, 92 F. Supp. 2d 786, 791 (N.D. Ill. 2000))); *S. Wine & Spirits of Am., Inc. v. Div. of Alcohol & Tobacco Control*, 731 F.3d 799, 811 (8th Cir. 2013) ("A 30(b)(6) witness's legal conclusions are not binding on the party who designated him, and a designee's testimony likely does not bind [its employer] in the sense of a judicial admission." (citation omitted)).

Snapp essentially seeks to take Freshour's deposition answers to leading questions examining isolated sentences from dense letters and use those answers as legal or judicial admissions as to whether Snapp requested an accommodation and whether BNSF engaged in the interactive process. His proposed limitations cut severely against the jury's truth-seeking function. The jury was entitled to, and did, hear the full evidence, see the full letters, see completely what Snapp communicated to BNSF, and see what BNSF said in response. The district court did not err in letting the jury hear evidence to explore and explain the

full communications between the parties. As such, the district court did not err in denying the motion for judgment as a matter of law.

**AFFIRMED.**