**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

MICHAEL KELLY,

               Plaintiff-Appellant,

   v.

THE BOEING COMPANY,

               Defendant-Appellee.

No.   19-35788

D.C. No. 3:18-cv-00659-SI

MEMORANDUM[*]

Appeal from the United States District Court
for the District of Oregon
Michael H. Simon, District Judge, Presiding

Argued and Submitted October 6, 2020
Portland, Oregon

Before: PAEZ and RAWLINSON, Circuit Judges, and PREGERSON,[**] District
Judge.

    Appellant Michael Kelly ("Kelly") appeals the district court's summary

judgment in favor of Appellee The Boeing Company ("Boeing"). We have

jurisdiction under 28 U.S.C. § 1291 and we **affirm**.

---

      [*]     This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

      [**]    The Honorable Dean D. Pregerson, United States District Judge for
the Central District of California, sitting by designation.

Boeing employed Kelly as a machinist from February 2011 to January 2017. Relevant to this appeal, Kelly was diagnosed with celiac disease in or around 2010 and suffered from gout a number of years prior to 2017. Due to these medical conditions, Kelly has difficulty urinating. In September 2015, Kelly entered into a "Last Chance Agreement" with Boeing wherein Kelly agreed to be subject to unannounced drug and alcohol testing for three years. The Last Chance Agreement provided that a "refusal to test," which included "tampering or otherwise invalidating by any means . . . or failure to cooperate in any part of the testing process," would be grounds for termination. On approximately January 12, 2017, Boeing terminated Kelly for attempting to tamper with a urine sample.

**1.** There is no evidence supporting Kelly's failure to accommodate claims under the American with Disabilities Act ("ADA") and the Oregon Rehabilitation Act ("ORA").[1] "The ADA treats the failure to provide a reasonable accommodation as an act of discrimination if the employee is a 'qualified individual,' the employer receives adequate notice, and a reasonable accommodation is available that would not place an undue hardship on the operation of the employer's business." *Snapp v. United Trans. Union*, 889 F.3d 1088, 1095 (9th Cir. 2018), *cert. denied sub nom. Snapp v. Burlington N. Santa Fe*

---

[1] Claims under the ORA are evaluated using the same legal standard as the federal ADA. *Snead v. Metropolitan Property & Cas. Ins. Co.*, 237 F.3d 1080, 1087 (9th Cir. 2001). Accordingly, we discuss the ADA and ORA claims together.

*Ry. Co.*, 139 S. Ct. 817 (2019). Prior to January 12, 2017, Kelly had successfully completed fifteen unannounced urine tests. On January 12, 2017, for the first time, Kelly requested an accommodation—to be taken to a physician because he was having difficulty urinating—after drug testing had commenced and after engaging in behavior which led test administrators to believe that Kelly was attempting to tamper with the urine sample. Even if Kelly's request for an accommodation under these circumstances were adequate notice, there is no dispute that Boeing had an accommodation in place for an inability to urinate. Under Boeing's policies, Kelly would have been taken to a physician, if he could not urinate within three hours of the last collection attempt. Kelly was not taken to a physician because three hours had not passed when the first test administrator reported witnessing Kelly attempting to tamper with the urine sample. Kelly does not put forth any evidence demonstrating otherwise.

**2.** There is also no evidence supporting Kelly's discrimination claims. ADA discrimination claims are analyzed under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). *See Mayo v. PCC Structurals, Inc.*, 795 F.3d 941, 944 (9th Cir. 2015). Assuming Kelly established a prima facie case of discrimination, Boeing provided a legitimate nondiscriminatory reason for terminating Kelly—two test administrators reported witnessing Kelly tamper with the urine test. Tampering with a urine

sample was grounds for termination under the Last Chance Agreement. Kelly did not put forth any direct or circumstantial evidence demonstrating that Boeing's nondiscriminatory reason was pretextual. *See Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1062 (9th Cir. 2002).

**3.** Kelly's retaliation claims similarly fail. "A prima facie case of retaliation requires a plaintiff to show: (1) involvement in a protected activity, (2) an adverse employment action and (3) a causal link between the two." *Coons v. Sec'y of U.S. Dept. of Treasury*, 383 F.3d 879, 887 (9th Cir. 2004). Even if Kelly established a minimal prima facie case based on temporal proximity, temporal proximity alone is insufficient evidence of pretext in light of the substantial evidence that Boeing received reports that Kelly attempted to tamper with the urine sample. *See Hashimoto v. Dalton*, 118 F.3d 671, 680 (9th Cir. 1997).

**4.** Next, there is no evidence supporting Kelly's claims under the Family and Medical Leave Act ("FMLA") and the Oregon Family Leave Act ("OFLA").[2] It was Kelly's burden to demonstrate that FMLA leave was a negative factor in the decision to terminate him. *See Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1125 (9th Cir. 2001) ("[The employee] need only prove by a preponderance of the evidence that her taking of FMLA-protected leave constituted a negative factor in

---

[2] OFLA claims are construed "to the extent possible in a manner that is consistent with any similar provisions of the federal" FMLA. Or. Rev. Stat. § 659A.186(2). Accordingly, we discuss the FMLA and OFLA claims together.

4

the decision to terminate her."). According to Kelly, he notified Supervisor Mark MacKinnon of his intent to take FMLA leave before his shift began on January 11, 2017. However, Boeing presented evidence that MacKinnon retired from Boeing five years prior to the date at issue. In any event, even if Kelly notified a supervisor of his intent to take leave, there is no evidence that the decisionmaker in Kelly's termination had any knowledge of Kelly's intent to take leave. The only evidence in the record is that the decisionmaker terminated Kelly after two test administrators reported that Kelly was attempting to tamper with a urine test.

**5.** For the reasons discussed above, there is also no evidence showing that Kelly's protected activity, FMLA or OFLA leave, was a "substantial factor" in Boeing's motivation to terminate Kelly such as to support a wrongful discharge claim. *See Sheppard v. David Evans & Assoc.*, 694 F.3d 1045, 1051 (9th Cir. 2012) ("[A] plaintiff must establish a causal connection between a protected activity and the discharge. A causal connection requires a showing that the employee's protected activity was a substantial factor in the motivation to discharge the employee." (internal quotations omitted) (citation omitted)).

**Affirmed.**