**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

KRISTI ADAMS,

               Plaintiff-Appellant,

   v.

COUNTY OF MARICOPA,

              Defendants-Appellees.

No. 20-17299

D.C. No. 2:19-cv-05253-MTL

MEMORANDUM[*]

Appeal from the United States District Court
for the District of Arizona
Michael T. Liburdi, District Judge, Presiding

Argued and Submitted November 17, 2021
Phoenix, Arizona

Before: MURGUIA, Chief Judge, CLIFTON, and BRESS, Circuit Judges.

    Kristi Adams is a former employee of the County of Maricopa ("County").

Ms. Adams appeals the district court's summary judgment in her action against the

County under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et*

*seq.*, and the Rehabilitation Act, 29 U.S.C. § 701 *et seq*. We have jurisdiction

pursuant to 28 U.S.C. § 1291 and review *de novo*. We affirm.

---

    [*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

1

## I.     Unlawful Discharge under the Acts

Discrimination claims under both the ADA and Rehabilitation Act are analyzed using the same standards. *See Wong v. Regents of Univ. of Cal.*, 192 F.3d 807, 822 n.34 (9th Cir. 1999), *as amended* (Nov. 19, 1999). Where an employer articulates a "legitimate nondiscriminatory reason" for terminating an employee, "the plaintiff must produce specific, substantial evidence of pretext" to defeat the employer's motion for summary judgment. *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889–90 (9th Cir. 1994) (internal quotations and citations omitted).

The County set forth two reasons for terminating Ms. Adams in its intent-to-terminate letter dated February 4, 2019: (1) Ms. Adams's discourteous behavior on August 10, 2018, in violation of the County's Code of Conduct, and (2) her repeated discipline for "abusive," "hostile," and "discourteous" behavior between May 2003 and January 2018, including a final warning and an additional misconduct incident. Ms. Adams contends that the County's reasons are not nondiscriminatory because "conduct resulting from a disability is considered to be part of the disability, rather than a separate basis for termination." *See Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128, 1139–40 (9th Cir. 2001); *Gambini v. Total Renal Care, Inc.*, 486 F.3d 1087, 1093 (9th Cir. 2007). Relying on *Humphrey* and *Gambini*, Ms. Adams avers that she "periodically acted out in inappropriate ways" as a result of her disabilities including bipolar disorder, that an evaluating psychiatrist found that the behaviors

of individuals with bipolar disorder are "consistent with" the misconduct identified in the County's grounds for termination, and that, as a result, Ms. Adams cannot be fired on the basis of her misconduct.

Ms. Adams's reliance on *Humphrey* and *Gambini* is misplaced. In those cases, the employer was aware of the employee's disability, refused accommodations, and then recast the resulting performance issues as misconduct warranting termination. *See Humphrey*, 239 F.3d at 1132, 1140; *see also Gambini*, 486 F.3d at 1091. But here, Ms. Adams does not argue that the County knew she was disabled when it set forth its reasons for terminating her. Ms. Adams says she "informed the County of her disabilities in a February 11, 2019 letter" sent by her attorney in response to the County's intent-to-terminate letter. "The ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 153 (2000). The County's ignorance of Ms. Adams's alleged disability means that its reasons for terminating Ms. Adams were nondiscriminatory in this case. *See Raytheon Co. v. Hernandez*, 540 U.S. 44, 54 n.7, 55 (2003) (explaining that when an employer is unaware of a disability, an adverse employment decision cannot have been intentionally discriminatory).

Moreover, Ms. Adams has not meaningfully alleged that her past history of misconduct "result[ed] from a disability," as was the case in *Humphrey* and *Gambini*. *See* 239 F.3d at 1139–40; *see also* 486 F.3d at 1091. In *Alamillo v. BNSF Railway Co*., we held that a physician's affidavit stating that certain behaviors fall within the "array of symptoms" of a disability did not create a genuine factual dispute as to whether the employee's termination was discriminatory, absent evidence that the disability directly caused the plaintiff's particular misconduct incidents. 869 F.3d 916, 921 (9th Cir. 2017). We can no sooner conclude that a report from an evaluating psychiatrist stating that bipolar disorder is "consistent with . . . outbursts" creates a triable issue as to whether Ms. Adams's fifteen years of misconduct were disability-related. Although Ms. Adams claims she "periodically acted out" because of her disabilities, she has not addressed any of the May 2003 to January 2018 Code of Conduct violations, much less explained how those behaviors resulted from her disability. *See Nilsson v. City of Mesa*, 503 F.3d 947, 952 n.2 (9th Cir. 2007) ("A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact." (alteration omitted)) (citing *Fed. Trade Comm'n v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997)). The County therefore has provided at least one nondiscriminatory basis for terminating Ms. Adams: her long history of discourteous behavior in violation of the County's Code of Conduct. This basis is unrebutted by

specific and substantial evidence of pretext, and the County is entitled to summary judgment on Ms. Adams's unlawful discharge claims. *See Wallis*, 26 F.3d at 890.

## II.    Failure to Accommodate under the Acts

Because the Acts require "reasonable accommodations to the known . . . limitations" of employees with disabilities, refusing to accommodate an employee is unlawful if the employer "receives adequate notice." *Snapp v. United Trans. Union*, 889 F.3d 1088, 1095 (9th Cir. 2018) (citing 42 U.S.C. § 12112(b)(5)(A)).

Even assuming that reasonable accommodations were available to prevent Ms. Adams's rude or abusive conduct in the future, we conclude that on the particular facts presented here, the County lacked adequate notice of Ms. Adams's limitations and it had no duty to accommodate her. While aware that the County was investigating her Code of Conduct violations, Ms. Adams expressly denied having limitations that affect her job performance and declined the option to seek accommodations. When Ms. Adams finally requested accommodations six months later, on February 11, 2019, she did so only after learning that the County intended to terminate her for a valid, nondiscriminatory reason. *See Dark v. Curry Cnty.*, 451 F.3d 1078, 1090 n.9 (9th Cir. 2006) (citations omitted) (distinguishing case where employee chose to "ignore[] the problem until [it] . . . warranted discharge" and requested accommodations to obtain a "second chance to change [her] own behavior"); *accord* EEOC, Enforcement Guidance: Reasonable Accommodation

and Undue Hardship Under the Americans with Disabilities Act ("EEOC ADA Enforcement Guidance"), 2002 WL 31994335, at *25 (2002) (duty to accommodate applies "except where the punishment for [past misconduct] is termination."). These circumstances deprived the County of fair notice of Ms. Adams's alleged need for accommodations. *See Snapp*, 889 F.3d at 1095; *see also* EEOC ADA Enforcement Guidance at *5 (recommending that an employee "request a reasonable accommodation when s/he knows that there is a workplace barrier . . . . [and] before performance suffers or conduct problems occur"). The County therefore had no duty to accommodate Ms. Adams and is entitled to summary judgment on her failure-to-accommodate claim. *See Brown v. Lucky Stores, Inc.*, 246 F.3d 1182, 1188–89 (9th Cir. 2001).

**AFFIRMED.**